Pedram Esfandiary (SBN: 312569)
pesfandiary@wisnerbaum.com
Monique Alarcon, Esq. (SBN: 311650)
malarcon@wisnerbaum.com
Timothy A. Loranger, Esq. (225422)
tloranger@wisnerbaum.com
**WISNER BAUM LLP**
11111 Santa Monica Blvd., Suite 1750
Los Angeles, CA 90025
Telephone: (310) 207-3233
Facsimile: (310) 820-7444

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISAAC CASTELLANOS,<br><br>Plaintiff<br><br>v.<br><br>CITY OF LOS ANGELES; CHIEF MICHEL MOORE; CODY MACARTHUR; JESSE PINEDA; JOHN JENAL and DOES 4-10 inclusive,<br><br>Defendants. | **CASE NO. 22-CV-1165**<br><br>**FIRST AMENDED COMPLAINT**<br><br>42 U.S.C. § 1983: FIRST, FOURTH, & FOURTEENTH AMENDMENTS;<br>CAL. CONST. ARTICLE I, §§ 2, 3, 13;<br>CAL. CIV. CODE §§ 52.1;<br>COMMON LAW TORT CLAIMS<br><br>**JURY TRIAL DEMANDED** |

FIRST AMENDED CIVIL RIGHTS COMPLAINT

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................... i

INTRODUCTION .............................................................................................. 1

JURISDICTION AND VENUE ......................................................................... 2

PARTIES............................................................................................................. 2

    I.     Plaintiff ............................................................................................. 2

    II.    Defendants ......................................................................................... 2

FACTS ................................................................................................................ 5

    I.     The LAPD's History of Violently Responding to Large Demonstrations . 5

    II.    Plaintiff Is Severely Injured By LLMs While Celebrating the Dodgers' World Serious Championship Victory ....................................................... 6

MONELL ALLEGATIONS ............................................................................... 8

    I.     The Settlement in *National Lawyers Guild v. City of Los Angeles* ..........11

    II.    The Settlement in *Multi-Ethnic Worker Organizing Network v. City of Los Angeles* ("*MIWON*") ...................................................................................12

    III.   The Summer of Protests Following George Floyd's Death .....................14

    IV.   LAPD's Use of LLMs at Large Gatherings After the George Floyd Protests .................................................................................................................15

PUNITIVE/EXEMPLARY DAMAGES ALLEGATIONS .................................16

(Against individual Defendants Chief Moore and Does 1-10) ................................16

EXHAUSTION OF ADMINISTRATIVE REMEDIES .........................................17

FIRST CAUSE OF ACTION ..............................................................................17

Free Speech and Assembly ................................................................................17

First & Fourteenth Amendments (42 U.S.C. § 1983); ........................................17

California Constitution, Article I, §§ 2 & 3 ........................................................17

SECOND CAUSE OF ACTION ..........................................................................19

Unlawful Seizure & Excessive Force ................................................................19

Fourth & Fourteenth Amendments (42 U.S.C. § 1983); .....................................19

California Constitution, Article I, § 13 ...............................................................19

THIRD CAUSE OF ACTION ..............................................................................20

Substantive Due Process.....................................................................................20

**Fourteenth Amendment (42 U.S.C. § 1983);** ...........................................................**20**

**California Constitution, Article I, § 13** ...............................................................**20**

**FOURTH CAUSE OF ACTION** ....................................................................**21**

**Violation of Bane Act (California Civil Code § 52.1)**...............................................**21**

**FIFTH CAUSE OF ACTION**.........................................................................**23**

**Assault** ........................................................................................................**23**

**SIXTH CAUSE OF ACTION** .......................................................................**24**

**Battery** .......................................................................................................**24**

**SEVENTH CAUSE OF ACTION** ................................................................**24**

**Negligence**..................................................................................................**24**

**REQUEST FOR RELIEF** .............................................................................**27**

CIVIL RIGHTS COMPLAINT

# **INTRODUCTION**

1.      This action arises out of the Los Angeles Police Department's (LAPD) unlawful use of force against plaintiff, Isaac Castellanos, during an impromptu celebration of the Los Angeles Dodgers' 2020 World Series Championship celebration in Downtown Los Angeles.

2.      Plaintiff, his friends, and hundreds of other Angelenos and Dodger fans gathered near the Crypto.com arena (formerly known as the Staples Center) to gather and celebrate the Los Angeles Dodgers' clinching the 2020 World Series Championship title.  Plaintiff's participation in the peaceful exercise of freedom of speech and assembly on the night of October 27, 2020 and into the early morning hours of October 28, 2020, turned into a violent nightmare due to the escalatory and dangerous crowd control tactics employed by the City of Los Angeles—through the LAPD and under the direction of Chief Michel Moore—resulting in plaintiff suffering severe permanent injury to his right eye following the LAPD's  unprovoked use of so-called "less lethal" projectiles.[1]

3.      Defendants' improper and unlawful crowd control tactics violated plaintiff's rights under the U.S. and California Constitutions, as well as plaintiff's statutory and common law rights.  Accordingly, this lawsuit seeks to hold defendants, and each of them, accountable for plaintiff's life-altering injuries and to put an end to each defendants' unconstitutional conduct.

//

//

//

---

[1] A 2017 review published by the British Medical Journal ("BMJ") examined 26 papers on rubber bullet injuries, covering a total of 1,984 injuries.  *See* Haar, R., et al., *Death, Injury and Disability From Kinetic Impact Projectiles in Crowd-Control Settings: A Systematic Review* 7 BMJ OPEN 1-9 (2017), available at: https://bmjopen.bmj.com/content/bmjopen/7/12/e018154.full.pdf.  The review found that 300 of those injuries resulted in permanent disabilities, especially if the bullet struck the head or neck.  *Id*. at 1.  Within this group, 53 people (3%) died from rubber-bullet related injuries. *Id*.

1

FIRST AMENDED COMPLAINT

## **JURISDICTION AND VENUE**

4.      This case is brought pursuant to 42 U.S.C. §§ 1983.  Jurisdiction is conferred on this Court based upon 28 U.S.C. §§ 1331 and 1343.  This Court also has supplemental jurisdiction over plaintiff's state law claims and over defendants pursuant to 42 U.S.C. § 1367.

5.      This Court has the authority to grant the requested declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, as well as Federal Rules of Civil Procedure 57 and 65, including pursuant to the Court's inherent equitable powers.

6.      Venue is proper within the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all defendants reside within this district and the events and omissions giving rise to plaintiff's claims occurred within this district.

## **PARTIES**

**I.      Plaintiff**

7.      Plaintiff **Isaac Castellanos** ("plaintiff"), at the time of the incident, was a 22-year-old college student and professional esports athlete and streamer.  Plaintiff is, and at all times material hereto was, a resident of Los Angeles County.

**II.      Defendants**

8.      Defendant **City of Los Angeles** ("City") is a municipal corporation duly organized and existing under the Constitution and laws of the State of California.  The Los Angeles Police Department ("LAPD") is a local government entity and an agency of the City, and all actions of the LAPD are the legal responsibility of the City.  The City is charged by law with the administration and operation of the LAPD, including the employment, control, supervision, discipline, training, and practices of LAPD's personnel and employees, and with the formulation of its policies, practices, and customs of LAPD's personnel and employees.  The City is sued in its own right on the basis of its policies, customs, and practices which gave rise to plaintiff's federal rights

FIRST AMENDED COMPLAINT

claims, as well as on the basis of *respondent superior*, under California Government Code § 815.2, for plaintiff's state law claims.

9. Defendant **Chief Michel Moore** ("Chief Moore") is, and at all times material hereto was, the LAPD police chief and a policymaker for his department. Chief Moore had notice of the LAPD's inadequate polices concerning use of less lethal projectiles in crowd control settings, and the LAPD's failure to adequately train each of its sworn personnel who was equipped with a less lethal weapon when responding to the incident where plaintiff was injured. Despite having notice of the City's inadequate policies, and its failure to train its employees, Chief Moore allowed the LAPD command staff, for which he is responsible, to respond with escalatory crowd control tactics and indiscriminate use of LLMs to a crowd of largely peaceful demonstrators. Chief Moore is sued in both his individual and official capacities.

10. Defendant **Cody MacArthur** ("Officer MacArthur") is, and at all times material hereto was, an LAPD officer assigned to LAPD's Metropolitan Division. Officer MacArthur was present during the October 27-28, 2020 incident during which plaintiff sustained injuries following use of LLMs by law enforcement. Officer MacArthur deployed LLMs at the time and location where Plaintiff was injured. He is sued in both his individual and official capacities. Officer MacArthur was previously identified as Doe 1.

11. Defendant **Jesse Pineda** ("Officer Pineda") is, and at all times material hereto was, an LAPD officer assigned to LAPD's Metropolitan Division. Officer Pineda was present during the October 27-28, 2020 incident during which plaintiff sustained injuries following use of LLMs by law enforcement. Officer Pineda deployed at least one LLM at the time and location where Plaintiff was injured. He is sued in both his individual and official capacities. Officer Pineda was previously identified as Doe 2.

12. Defendant **John Jenal** ("Lt. Jenal") is, and at all times material hereto was, an LAPD Lieutenant II assigned to LAPD's Metropolitan Division. Lt. Jenal was

3

FIRST AMENDED COMPLAINT

present during the October 27-28, 2020 incident during which plaintiff sustained injuries following use of LLMs by law enforcement.  Lt. Jenal participated in authorizing and/or supervising the use of LLMs at the time and location where Plaintiff was injured.  He is sued in both his individual and official capacities.  Lt. Jenal was previously identified as Doe 3.

13.     The identities, capacities, and/or nature of involvement of the defendants sued as **DOES 4 through 10** are presently unknown to plaintiff who therefore sues these defendants by fictitious names.  Plaintiff is informed, believes, and thereupon alleges that DOES 4 through 10 include individual LAPD personnel that were involved in some manner and are legally responsible for the wrongful acts and conduct alleged herein, including by authorizing and/or deploying the LLMs that injured plaintiff.  Plaintiff will amend this complaint to substitute the Doe defendants' true names and capacities when they have been ascertained.  Plaintiff is informed, believes, and thereupon alleges that each Doe defendant is a resident of California.

14.     Each of the defendants, including the Doe defendants, caused, and is responsible for, the unlawful conduct and resulting injuries suffered by plaintiff by, among other things, personally participating in the unlawful conduct, acting jointly, or conspiring with others who did so; by ordering, authorizing, acquiescing in, or setting in motion policies, plans, or actions that led to the unlawful conduct, by failing to take action to prevent the unlawful conduct; by failing and refusing to initiate and maintain adequate training and supervision; by failing to enact policies to address the constitutional rights of individuals peacefully assembled, despite the obvious need for such a policy; and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action.

15.     Plaintiff is informed, believes, and thereupon alleges that, at all times relevant hereto, defendants, and each of them, acted as the agents, servants, and employees of each of the other defendants.

FIRST AMENDED COMPLAINT

16.    In doing each of the acts and/or omissions alleged herein, defendants, and each of them, acted within the course and scope of their employment.

17.    In doing each of the acts and/or omissions alleged herein, defendants, and each of them, acted under color of authority and/or under the color of law.

## FACTS

**I.    The LAPD's History of Violently Responding to Large Demonstrations**

18.    The LAPD has a solemn history of violently responding to large demonstrations within the City.  Whether individuals gather to protest police violence, to engage in political speech, or to celebrate a Los Angeles sports team's victory, the LAPD's inadequate policies on the use of so-called "less lethal munitions" (LLMs) and crowd control tactics have directly contributed to disastrous and tragic injuries of individuals who are peacefully assembled at large demonstrations.

19.    "Less lethal" weapons are a deceptively monikered group of arms utilized by law enforcement for crowd control, ostensibly without the intention to cause death. Although such weapons are *less* likely to kill their target than are conventional weapons such as firearms shooting live ammunition, their use and misuse can result in serious and permanent bodily harm and have also caused death.[2]

20.    The City has a long, troubled history of employing unlawful crowd control tactics in response to protests.[3]  Over the course of the last several decades, the City has been sued repeatedly for much of the same conduct challenged herein, including excessive force with LLMs.  These lawsuits have involved the Democratic National Convention (2000), MacArthur Park (2007), and Occupy LA (2011).

---

[2]  *See* United Nations Public Order Management, *Less Than Lethal Weapons* (UN Peacekeeping PDT Standards for Formed Police Units, 1ˢᵗ Edn. 2015), available at: http://repository.un.org/bitstream/handle/11176/387390/Less%20Than%20Lethal%20Weapons.pdf#page=7.  LLMs include rubber bullets; rubber buckshot; soft polymer rounds; wax bullets; plastic bullets; beanbag rounds; sponge grenades; ring airfoil projectiles (both kinetic and tear gas projectiles); and rubber bullets with electroshock effect (e.g. Taser XREP rounds).

[3] *See LAPD Violence Against George Floyd Protests Erodes A Decade of Reforms* (LA TIMES, June 14, 2020), available at: https://www.latimes.com/california/story/2020-06-14/lapd-protest-history-criticism-heavy-tactics

5

FIRST AMENDED COMPLAINT

21. Following the in-custody death of George Floyd in Minneapolis, Minnesota, protests began in the City of Los Angeles on May 27, 2020 and continued for several weeks thereafter. While many protests were peaceful, some erupted in violence which was caused by small groups of individuals. In response to these largely peaceful demonstrations, however, the LAPD responded by indiscriminately firing less lethal munitions into large crowds of mostly peaceful protesters. Many LAPD officers who were permitted to fire less lethal weapon systems such as the 40mm, 37mm, and beanbag shotguns had received insufficient training on these weapons and received no specific training on the use of the 40mm and beanbag shotguns during crowd control settings. As a result, many peaceful demonstrators were severely injured by these weapon systems that the LAPD during the George Floyd protests.

22. This excessive and unlawful use of force against individuals gathered at mass gatherings is a deliberate, first-line tactic which is embedded in the institutional culture of the LAPD.

## II. Plaintiff Is Severely Injured By LLMs While Celebrating the Dodgers' World Serious Championship Victory

23. On the night of October 27, 2020, the Los Angeles Dodgers won the World Series Championship, bringing Dodger fans of all ages to celebrate in the streets of the City of Los Angeles. Plaintiff, Isaac Castellanos, and his friends joined other fans, including families with young children, in an impromptu celebration near the Crypto.com arena (formerly known as the Staples Center) in Downtown Los Angeles.

24. Just past midnight on October 28, 2020, at approximately 1:00 a.m., Mr. Castellanos and his friends were peacefully standing near the intersection of W. 11th Street and Hope Street, approximately two blocks east of Crypto.com arena. The majority of those in attendance were peacefully celebrating, like plaintiff and his friends.

25. Suddenly, plaintiff saw LAPD officers approach the crowd in the distance. As LAPD officers advanced toward the crowd, plaintiff heard weapons

FIRST AMENDED COMPLAINT

being fired and hundreds of people began screaming while running away from the LAPD officers.  As the crowd ran away, plaintiff turned back to account for his friends, when he noticed some of them were already running with the crowd and away from officers.

26.     When plaintiff briefly turned in the direction of the officers to grab one of his other friends and leave, he was struck in his right eye by a "less lethal" munition fired by an unidentified LAPD officer who was approximately 60-90 feet away from plaintiff.  Immediately after being shot in the eye, plaintiff felt excruciating pain and experienced a loss of vision.

27.     Defendants Officer MacArthur and Officer Pineda both fired LLMs towards Plaintiff and one shot struck Plaintiff in the eye, thereby causing his injuries. Upon information and belief, the shot of either Officer MacArthur or Officer Pineda struck Plaintiff in the eye. Lt. Jenal supervised Officers MacArthur and Pineda and, on information and belief, Lt. Jenal supervised and authorized the use of LLMs at the time that Plaintiff was injured.

28.     Plaintiff and his friend immediately left the area, fearing that they would be hit by additional LLMs that the LAPD officers were indiscriminately shooting towards the crowd.

29.     At no time did plaintiff present a threat of danger, violence, or self-harm. And at no time did plaintiff hear the LAPD issue an order to disperse or leave the area.

30.     Plaintiff's father transported him to the emergency room at approximately 3:00 a.m. on October 28, 2020.  He was treated for a traumatic injury to his eye with central loss of vision and persistent mydriasis (dilated pupils).

31.     After numerous follow up visits with various specialists, in January 2021, plaintiff was informed that his central loss of vision and persistent mydriasis were permanent due to the trauma from being struck in the eye with an LLM.

32.     At the time of his injury, plaintiff was only 22 years old and in the process of completing his final year of college at California State University, Long Beach.

7

FIRST AMENDED COMPLAINT

Prior to the incident, Plaintiff enjoyed a successful career as an esports athlete and streamer, and only a few weeks before the incident, plaintiff won a prominent gaming tournament, which was only the beginning of what would be a bright and lucrative future in esports.

33.     Plaintiff's injuries are still being evaluated by medical professionals and other experts.  As a direct and proximate result of being shot by LAPD officers, plaintiff suffered a traumatic injury to his right eye, including a permanent loss of central vision and persistent mydriasis.  As a further direct and proximate result, plaintiff continues to experience, *inter alia*, poor depth perception which interferes with his day-to-day activities, including studying, working, cooking, and athletic activities, and emotional distress, including anxiety and depression, which have interfered with his schooling, employment, and relationships.

34.     On information and belief, the decision to exercise unreasonable force by indiscriminately, and without warning, deploying LLMs against plaintiff and the crowd of peaceful fans celebrating the Dodgers' championship victory was ratified by Chief Moore, in consultation with other LAPD officials whose identities are presently unknown to plaintiff.

## MONELL ALLEGATIONS

35.     Plaintiff incorporates by reference each preceding allegation as if fully set forth herein and further alleges:

36.     Based upon the principles established in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), defendants are liable for all injuries sustained by plaintiff as set forth herein.  The City has failed to train LAPD officers in the constitutional responses to peaceful demonstrations and mass gatherings in public spaces, and the LAPD officers' actions were the result of the City's custom, policy, or practice of failing to train its employees.  The City has failed to inadequately supervise, instruct, and discipline its officers for their response to peaceful demonstrations and mass gatherings.  The City has condoned the constitutional

FIRST AMENDED COMPLAINT

violations and abuses that are the subject of this action and has thereby encouraged and ratified such conduct.

37.     The LAPD engaged in violations of law, as outlined above, by interfering with the exercise of protected speech through the use of indiscriminate and excessive and unreasonable force against plaintiff.  The excessive and unreasonable force inflicted upon plaintiff by the LAPD occurred through the use of LLMs while plaintiff was peacefully assembled on October 28, 2020.

38.     Specifically, Officers MacArthur and Pineda fired LLMs at plaintiff, and at least one shot caused severe and permanent physical injuries.  Plaintiff alleges, on information and belief, that the use of LLMs by the Officers MacArthur and Pineda was authorized by Lt. Jenal and ratified by Chief Moore.  Upon information and belief, Plaintiff alleges that the shot of either Officer MacArthur or Pineda struck Plaintiff and resulted in Plaintiff's injuries.  Discovery will further flesh out the circumstances of the incident.

39.     In conjunction with the City's long history of mass demonstration-related constitutional violations as alleged in this Complaint, each of the defendants' repeated unlawful acts on October 28, 2020, constitute a *de facto* policy, practice, and/or custom of violating constitutional rights of individuals gathered at peaceful demonstrations, including the constitutional rights of plaintiff.  Such policy, practice, and/or custom was the direct and proximate cause of plaintiff's injuries.

40.     As Chief of the LAPD, Defendant Chief Moore was fully knowledgeable and apprised of these actions and, upon information and belief, had notice of the LAPD's inadequate polices concerning use of less lethal projectiles in crowd control settings, and the LAPD's failure to adequately train each of its sworn personnel who was equipped with a less lethal weapon when responding to the incident where plaintiff was injured.  Despite having notice of the City's inadequate policies, and its failure to train its employees, Chief Moore allowed the LAPD command staff, for

FIRST AMENDED COMPLAINT

which he is responsible, to respond with escalatory crowd control tactics and indiscriminate use of LLMs to a crowd of largely peaceful celebrants.

41.     To the extent he did not make the decision and approve the plan himself, Chief Moore delegated responsibility and authority to persons within his command staff to act as the final policy maker in determining the response to the October 28, 2020, assembly in the downtown area.

42.     The City has failed to train its officers in the appropriate constitutional responses to peaceful demonstrations.  Specifically, the City failed to provide adequate training for: 1) proper crowd control and dispersal methods; and 2) proper use of LLMs in crowd control tactics.

43.     Upon information and belief, the City maintains policies, including the routine use of tactics, that are escalatory by nature, including the use of rubber bullets, riot gear, and other LLMs at demonstrations and protests for crowd control purposes, thereby placing individuals such as plaintiff at risk of serious injury.

44.     The rights of plaintiff that were violated in the instant matter were clearly established long before the incident on October 28, 2020.

45.     Upon information and belief, the City participates in the California Commission on Peace Officer Standards and Training ("POST").  As participating agencies, the City agrees to abide by the standards established by POST.  The LAPD's conduct, as alleged herein, failed to comply with POST guidelines on crowd management, intervention, and control.

46.     The need for training and discipline to enforce constitutional guarantees in peaceful mass gatherings is obvious, yet the City has failed to promulgate adequate policies in accordance with federal law and/or to train its command staff and officers on appropriate policies.

47.     The City is well aware of its constitutional duties in these circumstances in light of the settlement agreements and consent judgments discussed below in *National Lawyers Guild v. City of Los Angeles* and *Multi-Ethnic Worker Organizing*

10

FIRST AMENDED COMPLAINT

*Network v. City of Los Angeles. City of Los Angeles*, as well as other settlements entered into specifying these constitutional duties over the years.  Indeed, in May 2020, a federal district court judge entered a final judgment against the City of Los Angeles in a class action settlement involving the City's unconstitutional crowd control tactics during protests following the Ferguson Grand Jury decision not to indict the officer who shot and killed Michael Brown.  *See Charmaine Chua, et al. v. City of Los Angeles, et al.*, 2:16-CV-00237 (C.D. Cal. 2020).

48.    The City has known of the deficiencies in the training of its officers in such circumstances since at least 2000 and entered into a settlement agreement in June 2005 and June 2009, each time agreeing to revise its policies and training, yet the City has failed to promulgate adequate policies effectuating the terms of the settlement agreement and/or to train its command staff and officers on the revised policies, if any exist.

**I.     The Settlement in *National Lawyers Guild v. City of Los Angeles***

49.    In June 2005, the City of Los Angeles entered into a settlement agreement in *National Lawyers Guild, et al. v. City of Los Angeles, et al.*, CV 01-6877 FMC (CWx), an action arising from the disruption of lawful assemblies and use of unlawful force during the Democratic National Convention ("DNC") in Los Angeles in 2000 and a subsequent demonstration on October 22, 2000.  The settlement provided for important changes in the policy and practices of the LAPD as applied to demonstrations.

50.    Significantly, the settlement addressed the use of LLMs and chemical irritants to disperse peaceful protesters.  Also, the settlement provided that, prior to declaring an unlawful assembly, the LAPD Incident Commander should evaluate the feasibility of isolating and arresting those responsible for any unlawful conduct, and if feasible, take action only against those individuals.

//
//

FIRST AMENDED COMPLAINT

**II.    The Settlement in *Multi-Ethnic Worker Organizing Network v. City of Los Angeles* ("*MIWON*")**

51.    On May 1, 2007 ("May Day"), the LAPD assaulted a peaceful, permitted immigration march in the MacArthur Park area of Los Angeles.  Like here, the attack on demonstrators was without warning.  No dispersal order was given until more than three minutes into the police action and, even then, the dispersal order was grossly inadequate, given from helicopters in English to a largely Spanish-speaking assembly.  During the course of litigating the *MIWON* action, the LAPD conceded that it had not fully implemented training and policy orders regarding the *NLG* settlement two years earlier.  In fact, no policy changes were ever finalized.

52.    On June 24, 2009, the federal district court approved and entered a Structural Relief Order as part of the settlement of the class action lawsuit brought on behalf of all those subjected to the LAPD's May Day action.

53.    In a section titled "Use of Less Lethal Weapons", the Order states:

  a. Less-lethal munitions may be deployed on ***aggressive and/or combative suspects*** in a crowd control situation, on suspects who are a ***potential physical threat*** to themselves or others, or suspects displaying 'aggressive' and/or 'combative' actions.

  b. For the purpose of deployment of less-lethal munitions, 'aggressive' and/or 'combative' actions include ongoing destruction of property that presents a threat to the personal safety of officers or others.

  c. Less lethal weapons should not be used on a lawfully dispersing crowd or individual.

  d. Less lethal weapons should not be used against a person or a crowd that is retreating unless the person or crowd continues to engage in unlawful activity that is aggressive and/or combative.

FIRST AMENDED COMPLAINT

e. Where feasible, ***notice should be given to the crowd before less lethal weapons are deployed*** in a crowd control or dispersal situation, and where feasible, it should be given in the language(s) spoken by those assembled.

f. If the LAPD resumes the use of stinger rounds, the LAPD will publish a notice that will require that less-lethal stinger weapons can be used only with the approval of a staff officer (i.e., commander or above) and only in a riotous situation where the use of lethal force would not be reasonable.

(emphasis added).

54. As demonstrated by the LAPD's widespread conduct on the date of this incident, the conditions authorizing the use of LLMs were not adhered to on October 28, 2020 and plaintiff, who was peacefully assembled to celebrate the Dodgers' World Series victory, was subjected to unreasonable and excessive force.

55. Moreover, the Order set out specific requirements to declare an unlawful assembly: an amplified loudspeaker system with an officer at the far side of the crowd to record the officer; if there is no serious violence occurring, the order shall be made repeatedly over a period of time, including an "objectively reasonable period of time to disperse and identification of "a clear and safe route" to follow to disperse. The order should be given so that it is heard by the entire crowd. These requirements were not met in this instance at the location where plaintiff was present and where he was injured. At no time did plaintiff receive a dispersal order or warning prior to being shot and injured.

56. The terms of the *MIWON* structural relief agreement were to be included in the LAPD's Crowd Control and Use of Force Manuals and every officer at the rank of Sergeant I and above, as well as the entire Metropolitan Division, were to undergo training every two years. On information and belief, Chief Moore, as well as those members of his command staff to whom he has delegated his responsibility to enact and implement lawful policies for responding to demonstrations, are aware of the

13

unlawful policies, practices, and customs of the City and the LAPD which resulted in the settlement in *National Lawyers Guild v. City of Los Angeles* in June 2005.

57.    Moreover, Chief Moore and his delegated command staff were at all relevant times aware that the use of unlawful or inadequate dispersal orders and LLMs to respond to large demonstrations, made up of non-violent demonstrators, is a routine practice of the LAPD, and thus, it was critical for leadership to ensure that official policy was implemented in a manner sufficient to protect the rights of those peacefully assembled in public streets.  The City and Chief Moore's failure to take these necessary steps directly and proximately led to the injuries suffered by plaintiff in the instant matter.  This failure amounted to an acquiescence in the constitutional deprivations alleged herein and deliberate indifference to plaintiff's constitutional rights.

**III.    The Summer of Protests Following George Floyd's Death**

58.    Following the in-custody death of George Floyd in Minneapolis, Minnesota, protests began in the City of Los Angeles on May 27, 2020 and continued for several weeks thereafter.  In response to these largely peaceful demonstrations, however, the LAPD responded by indiscriminately firing less lethal munitions into large crowds of mostly peaceful protesters.

59.    Dozens of individuals suffered serious injuries (many resulting in hospitalization) due to the LAPD's use of LLMs at mass demonstrations.[4]

60.    On June 5, 2020, a class action lawsuit was filed against the City for its unconstitutional response to the George Floyd protests, including, *inter alia*, the

---

[4] *See LAPD's use of batons, other weapons violates rules, significantly injuring protesters, Times review finds* (LA TIMES, June 11, 2020), available at: https://www.latimes.com/california/story/2020-06-11/lapd-violated-protocols-for-batons-and-less-lethal-bullets-injuring-many-protesters

14

FIRST AMENDED COMPLAINT

indiscriminate use of LLMs on large demonstrations by LAPD officers who received inadequate training.[5]

61.     An independent examination of the LAPD's response to the George Floyd protests, which was commissioned by the City Council, revealed serious longstanding problems with the LAPD's response to large demonstrations, including its failure to provide officers recurring certification and training on the use of 40mm less lethal weapons and failure to provide training on how to use 40mm weapons during crowd control situations.

**IV.    LAPD's Use of LLMs at Large Gatherings After the George Floyd Protests**

62.     Following the weeks of protests related to the murder of George Floyd, the LAPD continued to improperly use LLMs on individuals gathered at mass demonstrations.

63.     In August 2020, the LAPD responded to an anti-Trump protest in the Tujunga neighborhood of the City.  While standing approximately three feet away from protesters, an LAPD officer fired an LLM at a woman, striking her on her chest at close range, and leaving her with a severe injury to her breast that requires reconstructive surgery.

64.     On August 26, 2020, at the 3rd Street tunnel in Downtown Los Angeles, the LAPD fired LLMs at persons protesting the police shooting of Jacob Blake in Kenosha, Wisconsin, injuring several protesters.

65.     On October 11, 2020, the Los Angeles Lakers secured the NBA Championship title, causing Angelenos to gather in an impromptu celebration outside of the formerly known Staples Center.  While most individuals who gathered were peacefully celebrating in the public street and sidewalks, some individuals were disruptive.  Once again, the LAPD responded by indiscriminately firing LLMs into the largely peaceful crowd of individuals assembled to celebrate the Lakers' win.

---

[5] *See, e.g.*, *LAPD Sued by Black Lives Matter-LA in Federal Court Over Mass Detention* (LA DAILY NEWS, June 5, 2020), available at: https://www.dailynews.com/2020/06/05/lapd-sued-by-black-lives-matter-la-in-federal-court-over-mass-detention/

15

FIRST AMENDED COMPLAINT

66.    During the Lakers celebration, one man was struck in the eye with an LLM, shattering his eye socket and causing his eye to "explode."[6]  A part-time photographer lost eight teeth and part of his lip when a projectile struck him in the mouth.  A third man who was standing away from the larger crowd was also struck in the face and suffered a fractured facial bone.

67.    On October 28, 2020, the LAPD similarly responded to the Dodgers' World Series celebration by indiscriminately firing LLMs at individuals within the crowd who were peacefully assembled, this time severely injuring plaintiff as described herein.

68.    The LAPD's unreasonable and excessive force towards individuals peacefully assembled in City streets during large gatherings is endemic and perpetuated by the policies, practices, and customs of the LAPD.

## PUNITIVE/EXEMPLARY DAMAGES ALLEGATIONS

**(Against Defendants Chief Moore, Officer MacArthur, Officer Pineda, Lt. Jenal, and Does 4-10)**

69.    Each defendant's conduct as alleged herein was done with reckless disregard for human life, oppression, and malice.  Defendants, and each of them, were fully aware of the serious and demonstrable risk of serious bodily injury and death associated with deploying LLMs against peaceful celebrants such as plaintiff, and that such risks are compounded when used to strike vulnerable and sensitive parts of plaintiff's person with rubber bullets—such as his head and stomach.  With full knowledge of such risks, and that the use of LLMs in such circumstances is unlawful, defendants proceeded to unlawfully fire LLMs at plaintiff and/or recommend, authorize, and ratify the use of LLMs against plaintiff, all of which resulted in plaintiff sustaining severe physical, mental and emotional harm.

---

[6] *See One man's eye 'exploded,' another lost eight teeth from LAPD projectiles fired at Lakers revelers* (LA TIMES, Oct. 15, 2020), available at: https://www.latimes.com/california/story/2020-10-15/lapd-projectiles-gruesome-injuries-lakers-celebration

FIRST AMENDED COMPLAINT

70.     Defendants authorized and executed the unlawful deployment of LLMs with malice and with the specific intent to injure, debilitate, and incapacitate plaintiff physically and to deny, impede and constrain plaintiff's Constitutional rights and dissuade plaintiff from participating in future mass events.

71.     The defendant officers, and each of them, acted with malice and oppression and with a conscious disregard for plaintiff's rights, making the individual defendants, including Does 4-10, liable for punitive damages under California Civil Code § 3294.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

72.     On June 11, 2020, Plaintiff filed a claim with the City pursuant to Cal. Gov't Code § 910 *et seq.*  Plaintiff's government claim was timely, pursuant to Governor Newsom's Executive Order N-08-21, which provides that "[c]laims accruing before June 30, 2021, will remain subject to the 120-day extension granted in the aforementioned orders." Executive Order N-08-21 ¶ 7(e).  While, under ordinary circumstances, plaintiff would have only had until April 28, 2021, to present his government claim to the City, Executive Order N-08-21 granted plaintiff an additional 120 days to file his claim.  Thus, plaintiff's actual deadline to present his claim was August 26, 2021.

73.     On September 1, 2021, the City notified plaintiff that his claim was denied, thereby permitting the filing of this complaint.

### FIRST CAUSE OF ACTION
### Free Speech and Assembly
### First & Fourteenth Amendments (42 U.S.C. § 1983);
### California Constitution, Article I, §§ 2 & 3
### (Against all Defendants)

74.     Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and all subsequent paragraphs.

17

FIRST AMENDED COMPLAINT

75.    Upon information and belief, defendants were acting jointly and in concert in taking the actions alleged.

76.    Defendants' above-described conduct violated plaintiff's rights to freedom of speech and assembly under the First Amendment to the United States Constitution and the analogous provisions of the California Constitution.

77.    Defendants' actions violated plaintiff's clearly established rights to freedom of expression and assembly under the First Amendment to the United State Constitution by prohibiting plaintiff from exercising his constitutional rights to free speech and expression in a public forum.

78.    Specifically, defendants inhibited and chilled plaintiff's First Amendment activity by injuring him with LLMs when plaintiff was engaged in a peaceful mass gathering at a public forum, celebrating the Los Angeles' Dodgers' World Series Championship victory.  Plaintiff's protected First Amendment activity was a substantial or motivating factor in defendants' use of force intended to chill plaintiff's speech.

79.    As a direct and proximate result of defendants' unlawful conduct, plaintiff suffered severe and lasting physical injury, mental and emotional distress, and humiliation, some of which may be permanent, and is entitled to monetary damages for each of said losses and damages.

80.    As a further direct and proximate result of the acts and conduct of defendants, and each of them, as herein alleged, plaintiff has incurred, and on information and belief, will incur for an indefinite time in the future, medical, hospital and related expenses, all in a sum presently unascertained, but according to proof at the time of trial.

81.    As a further direct and proximate result of the acts and conduct of defendants, and each of them, as herein alleged, plaintiff has suffered loss of income and loss of earning capacity, all in a sum presently ascertained, but according to proof at the time of trial.

FIRST AMENDED COMPLAINT

82.   Defendants knew or should have known that prohibiting plaintiff from exercising his constitutional rights to free speech and expression in a public forum were clearly established violations of the First Amendment at the time of the incident.

83.   The defendant officers acted with malice and oppression and with a conscious disregard for plaintiff's rights, making the individual defendants, including Does 4-10, liable for punitive damages under California Civil Code § 3294.

**SECOND CAUSE OF ACTION**

**Unlawful Seizure & Excessive Force**

**Fourth & Fourteenth Amendments (42 U.S.C. § 1983);**

**California Constitution, Article I, § 13**

**(Against all Defendants)**

84.   Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs, and all subsequent paragraphs of this Complaint.

85.   Defendants' above-described conduct violated plaintiff's rights to be free from unreasonable seizures and excessive force, in violation of the Fourth Amendment to the United States Constitution and the analogous provisions of the California Constitution.

86.   With no lawful basis, reasonable suspicion, probable cause, or warrant, defendants intentionally and unlawfully seized plaintiff's person by physically shooting LLMs at plaintiff from a distance of approximately 60-90 feet and striking plaintiff in the eye.  Defendants could not have reasonably believed that plaintiff had committed or was about to commit any crime or public offense, particularly since plaintiff was unarmed, non-violent, and simply minding his own business when he was shot in the eye with LLMs.

87.   With no lawful basis, reasonable suspicion, probable cause, or warrant, defendants used excessive a force on plaintiff by unjustifiably firing LLMs at plaintiff from a distance of approximately 60-90 feet and striking plaintiff in the eye, causing

19

FIRST AMENDED COMPLAINT

severe physical injury when there was no reason to so restrain a peaceful and law-abiding individual such as plaintiff.

88.     Defendants knew or should have known that using excessive force against plaintiff in this manner and detaining plaintiff without reasonable suspicion or probable cause was a clearly established violation of the Fourth Amendment at the time of the incident.

89.     As a direct and proximate result of defendants' unlawful conduct, plaintiff suffered severe physical injury, emotional distress, humiliation and is entitled to monetary damages.

90.     Plaintiff intends to continue attending and participating in mass public gatherings and the like in the future but fears further assault and other retaliation by law enforcement.  That fear inhibits plaintiff from participating in these types of mass gatherings.

91.     The defendant officers acted with malice and oppression and with a conscious disregard for plaintiff's rights, making the individual defendants, including Does 4-10, liable for punitive damages under California Civil Code § 3294.

### THIRD CAUSE OF ACTION
### Substantive Due Process
### Fourteenth Amendment (42 U.S.C. § 1983);
### California Constitution, Article I, § 13
### (Against all Defendants)

92.     Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

93.     Defendants' above-described conduct violated plaintiff's right to substantive due process of law, in violation of the Fourteenth Amendment to the United States Constitution and the analogous provisions of the California Constitution.

94.     Specifically, defendants' conduct in unjustifiably firing LLMs at plaintiff and striking plaintiff in the eye, causing severe physical injury, while plaintiff was

20

FIRST AMENDED COMPLAINT

peacefully celebrating the Los Angeles' Dodgers' World Series Championship victory was shocking to the conscious, beyond the bounds of acts tolerable in a civilized society, and so egregious and outrageous that may fairly be said to shock the contemporary conscience.

95.   Defendants' conduct in unjustifiably firing LLMs at plaintiff and striking plaintiff in the eye, causing severe physical injury, while plaintiff was peacefully attending a sports celebration was maliciously and sadistically done for the very purpose of causing harm to plaintiff.

96.   Defendants knew or should have known that using excessive force against plaintiff in this manner was a clearly established violation of the Fourteenth Amendment at the time of the incident.

97.   As a direct and proximate result of defendants' unlawful conduct, plaintiff suffered severe and permanent physical injury, emotional distress, and humiliation, and is entitled to monetary damages.

98.   Plaintiff intends to continue attending and participating in mass public gatherings and the like in the future but fears further assault and other retaliation by law enforcement.  That fear inhibits plaintiff from participating in these types of mass gatherings.

99.   The defendant officers acted with malice and oppression and with a conscious disregard for plaintiff's rights, making the individual defendants, including Does 4-10, liable for punitive damages under California Civil Code § 3294.

## FOURTH CAUSE OF ACTION

### Violation of Bane Act (California Civil Code § 52.1)

**(Against all Defendants)**

100.   Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and all subsequent paragraphs.

21

FIRST AMENDED COMPLAINT

101.   Plaintiff brings this cause of action against all defendants by operation of state law.  Plaintiff has complied with the California Tort Claims Act requirements as fully set forth above.

102.   All defendants, and each of them, by doing and/or causing the acts complained of in this entire Complaint, interfered by threats, intimidation, or coercion, with the exercise and enjoyment of plaintiff's rights as secured by the First, Fourth, and Fourteenth Amendments to the United States Constitution and laws of the United States, and the rights secured by the Constitution and laws of the State of California.

103.   Defendants engaged in threatening, intimidating, and coercive tactics by using excessive force against plaintiff with LLMs while plaintiff was lawfully present at a peaceful gathering, and thereby chilling his First Amendment activity.  There was no lawful justification for defendants to threaten, intimidate, or coerce plaintiff or to attempt to use threats, intimidation, or coercion to interfere with plaintiff's rights to lawfully participate in a peaceful gathering.

104.   Defendant City of Los Angeles is liable to plaintiff for the acts of its public employees, the individual defendants named herein, including the Doe defendants, for the conduct and/or omissions alleged herein, pursuant to the doctrine of *respondent superior*, codified at California Government Code § 815.2.

105.   As a direct and proximate result of defendants' unlawful conduct, plaintiff suffered severe physical injury, emotional distress, humiliation and is entitled to monetary damages, including statutory damages, and attorneys' fees.

106.   Plaintiff intends to continue attending and participating in mass public gatherings and the like in the future but fears further assault and other retaliation by law enforcement.  That fear inhibits plaintiff from participating in these types of mass gatherings.

107.   The defendant officers acted with malice and oppression and with a conscious disregard for plaintiff's rights, making the individual defendants, including Does 4-10, liable for punitive damages under California Civil Code § 3294.

FIRST AMENDED COMPLAINT

# FIFTH CAUSE OF ACTION

## Assault

### (Against all Defendants)

108.   Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and all subsequent paragraphs.

109.   This cause of action arises under the general laws and Constitution of the State of California.  Plaintiff has complied with the California Tort Claims Act requirements.

110.   As described in detail herein above, each individual Doe defendant assaulted plaintiff by acting intentionally to place plaintiff in reasonable apprehension of immediate harmful or offensive contact by, *inter alia*, aiming LLMs at plaintiff, firing LLMs at plaintiff, striking plaintiff with an LLM in his eye, and using force upon plaintiff, and had the present ability to cause such contact.

111.   As a direct and proximate result of the acts and conduct of defendants, and each of them, at the time and place herein alleged, plaintiff suffered fear of immediate harmful or offensive touching by LLMs wielded by defendants, and each of them.

112.   Plaintiff intends to continue attending and participating in mass public gatherings and the like in the future but fears further assault and other retaliation by law enforcement.  That fear inhibits plaintiff from participating in these types of events.

113.   The defendant officers acted with malice and oppression and with a conscious disregard for plaintiff's rights, making the individual defendants, including Does 4-10, liable for punitive damages under California Civil Code § 3294.

//

//

//

//

23

FIRST AMENDED COMPLAINT

## SIXTH CAUSE OF ACTION

### Battery

### (Against all Defendants)

114. Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and all subsequent paragraphs.

115. This cause of action arises under the general laws and Constitution of the State of California. Plaintiff has complied with the California Tort Claims Act requirements.

116. As described in detail herein above, each individual Doe defendant battered plaintiff when said defendants acted intentionally to cause, and did cause, said non-consensual, unprivileged, unjustified, excessive, harmful, or offensive contact to plaintiff's person by shooting plaintiff with an LLM, striking his eye, and causing plaintiff the injuries and damages as herein alleged.

117. As a direct and proximate result of defendants' unlawful conduct, plaintiff suffered the injuries and damages as herein alleged.

118. Plaintiff intends to continue attending and participating in mass public gatherings and the like in the future but fears further assault and other retaliation by law enforcement. That fear inhibits plaintiff from participating in these types of mass gatherings.

119. The defendant officers acted with malice and oppression and with a conscious disregard for plaintiff's rights, making the individual defendants, including Does 4-10, liable for punitive damages under California Civil Code § 3294.

## SEVENTH CAUSE OF ACTION

### Negligence

### (Against all Defendants)

120. Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and all subsequent paragraphs.

24

FIRST AMENDED COMPLAINT

121.    This cause of action arises under the general laws and Constitution of the State of California.  Plaintiff has complied with the California Tort Claims Act requirements.

122.    For purposes of this cause of action only, allegations are deemed to sound in negligence, and set forth pursuant to California Civil Code Section §1714 and California common law.

123.    At all times material herein, defendants—as a law enforcement agency and personnel charged with executing their duties without the threat of unreasonable risk to plaintiff—and each of them, had a duty to act reasonably to avoid, or foresee, the risk that said defendants themselves, or their colleagues or subordinates, would commit the acts complained of herein, including but not limited to: (a) encountering and physically harming a person such as plaintiff participating in a peaceful demonstration and (b) authorizing and using LLMs inappropriately as crowd control devices.

124.    Defendant City of Los Angeles had a duty to act reasonably to foresee and avoid the risk that itself, or its sworn law enforcement personnel, would commit the acts complained of herein.

125.    Defendants, and each of them, breached their duty of care by not acting reasonably under the circumstances of such risk, as described herein above, and/or by impeding or otherwise curtailing the civil rights of, or endangering, without lawful basis, plaintiff.

126.    Specifically, Defendants MacArthur and Pineda, and Does 4-10, and each of them, breached their duty of care and failed to act toward plaintiff as a reasonable law enforcement officer would in similar circumstances by firing LLMs at plaintiff— who was peacefully standing in a public forum—and/or failing to take proper precautions when using such unwarranted crowd control tactics by, *inter alia*, aiming and firing plaintiff's face, which should not be targeted by LLMs.  At all times herein

FIRST AMENDED COMPLAINT

relevant, other less dangerous and intrusive crowd control tactics were available to each defendant.

127. Defendant Lt. Jenal breached his duty of care and failed to act as a reasonable LAPD lieutenant and supervising officer would in similar circumstances by allowing his subordinates to engage in unlawful crowd control tactics and authorizing and supervising the improper use of LLMs against plaintiff when other less dangerous and intrusive crowd control tactics were available.

128. Defendant Chief Moore breached his duty of care and failed to act as a reasonable Chief of Police and official policymaker for the LAPD would in similar circumstances by allowing his subordinates to continuously engage in unlawful crowd control tactics and ratifying the use of LLMs against plaintiff when other less dangerous and intrusive crowd control tactics were available.

129. At all times herein relevant, defendants, and each of them, failed to follow established guidelines, rules and procedures—including their own—for the use of LLMs and crowd control tactics, and the City specifically breached its court-ordered mandate issued in *MIWON* related to the use of force at demonstrations.

130. At all times herein relevant, defendant City of Los Angeles and individual defendants Chief Moore, Officer Pineda, Officer MacArthur, Lt. Jenal, and Does 4-10 breached their duty of care by not acting reasonably under the circumstances of such risk, as described herein above, and/or by failing to discharge their respective duties to appropriately screen and train their employees, investigate and discipline their employees for misconduct, and acting negligently by authorizing and ratifying the use of LLMs, improperly utilizing LLMs and firing them at plaintiff, and providing improper training that condoned the escalatory and dangerous tactics employed by LAPD officers which resulted in harm to plaintiff.

131. Each defendant's aforesaid breaches of duty were each a direct and proximate cause of the injuries and damages suffered by plaintiff, as alleged in this complaint.

FIRST AMENDED COMPLAINT

132.   Defendant City of Los Angeles is liable to plaintiff for the acts of its public employees, the individual defendants herein, for conduct and/or omissions herein alleged, pursuant to the doctrine of *respondent superior*, codified at California Government Code § 815.2.

## REQUEST FOR RELIEF

Wherefore, plaintiff respectfully requests that the Court enter a judgment as follows:

    i.  A declaratory judgment that defendants' conduct detailed herein was a violation of plaintiff's rights under the Constitutions and laws of the United States and California;

    ii.  To the extent that the Court finds that defendants' conduct was authorized by custom, policy, or practice, and/or the inadequate training, supervision, instruction and discipline, a declaratory judgment that those customs, policies, or practices, and/or the inadequate trainings, supervisions, instructions and disciplines are unconstitutional under the First, Fourth, and Fourteenth Amendments to the United States Constitution, and the analogous provisions of the California Constitution;

    iii. Permanent injunctive relief to preclude similar acts by defendants at future gatherings.

    iv. An award of past and future economic damages against all defendants for the harms sustained by plaintiff in an amount to be determined according to proof at the time of trial;

    v.  An award of general damages against defendants, and each of them, for the physical, mental and emotional damages, past and future, according to proof at the time of trial;

    vi. An award of punitive and exemplary damages against the individual defendants in an amount to be determined according to proof at the time of trial;

27

FIRST AMENDED COMPLAINT

vii. An award of attorneys' fees pursuant to 42 U.S.C. §§ 1983, 2986, 1988, 12205 and Cal. Civil Code §§ 52.1, 52(b)(3) & 52.1(h) and Cal. Code of Civ. Proc. § 1021.5, and any other applicable provisions, and

viii. Costs of suit and pre- and post-judgment interest as permitted by law;

ix. Any such other relief as the Court may deem just and proper.

Respectfully submitted,

Dated:  February 27, 2023          **WISNER BAUM LLP**

By:  /s/ Monique Alarcon
Monique Alarcon, Esq.
malarcon@wisnerbaum.com
Pedram Esfandiary, Esq.
pesfandiary@wisnerbaum.com
Timothy A. Loranger, Esq.
tloranger@wisnerbaum.com

**WISNER BAUM LLP**
11111 Santa Monica Boulevard, Suite 1750
Los Angeles, CA 90025
Telephone: (310) 207-3233

*Attorneys for Plaintiff*

FIRST AMENDED COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiff hereby respectfully demands that a jury trial be conducted with respect to all issues and claims.

Respectfully submitted,

Dated:  February 27, 2023          **WISNER BAUM LLP**

By:  /s/ Monique Alarcon
Monique Alarcon, Esq.
malarcon@wisnerbaum.com
Pedram Esfandiary, Esq.
pesfandiary@wisnerbaum.com
Timothy A. Loranger, Esq.
tloranger@wisnerbaum.com
**WISNER BAUM LLP**
11111 Santa Monica Boulevard, Suite 1750
Los Angeles, CA 90025
Telephone: (310) 207-3233

*Attorneys for Plaintiff*

29

FIRST AMENDED COMPLAINT