**O**

# United States District Court
# Central District of California

ISAAC CASTELLANOS,

Plaintiff,

v.

CITY OF LOS ANGELES et al.,

Defendants.

Case № 2:22-cv-01165-ODW (GJSx)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT OFFICERS' MOTION FOR JUDGMENT ON THE PLEADINGS [52]**

## I.    INTRODUCTION

Plaintiff Isaac Castellanos brings this action against Defendants City of Los Angeles, Los Angeles Police Department ("LAPD") Chief Michel Moore, Officer Cody MacArthur, Officer Jesse Pineda, and Lieutenant John Jenal (collectively "Defendants") for excessive force in violation of Castellanos's First, Fourth, and Fourteenth Amendment rights when Officers MacArthur and Pineda deployed less-than-lethal ammunition to disperse crowds during the early morning hours of October 28, 2020.  (First Am. Compl. ("FAC"), ECF No. 35.)  Officers MacArthur, Pineda, and Lieutenant Jenal ("Defendant Officers") now move for judgment on the pleadings, or, in the alternative, for partial summary judgment.  (Mot. J. Pleadings ("Motion" or "Mot."), ECF No. 52.)  The Motion has been fully briefed.  (*See* Mot.;

Opp'n Mot. ("Opp'n"), ECF No. 61; Reply ISO Mot. ("Reply"), ECF No. 68.)  For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion.[1]

## II.    BACKGROUND

The following facts are taken from Castellanos's FAC.  *See Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (stating that, when considering a motion for judgment on the pleadings, the court "must accept all allegations in the complaint as true and construe them in the light most favorable to the non-moving party"); *see also Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989).

On the night of October 27, 2020, Castellanos joined other fans in celebrating the Los Angeles Dodgers World Series Championship win in Downtown Los Angeles.  (FAC ¶ 23.)  The post-game celebration was comprised of fans of all ages, including families and young children.  (*Id.*)  The majority of those in attendance, including Castellanos and his friends, were peacefully celebrating.  (*Id.* ¶ 24.)

Shortly after midnight, in the early hours of October 28, 2020, Castellanos observed LAPD officers approach the crowd of celebrating fans and heard weapons "being fired and hundreds of people [] screaming while running away from the LAPD officers."  (*Id.* ¶ 25.)  The LAPD officers fired a type of "less than lethal" beanbag ammunition ("LLM") into the crowd to disperse the celebrating fans.  (*Id.* ¶¶ 21, 25.)  While looking for a friend, Castellanos turned toward the firing officers and was struck in his right eye by an LLM projectile.  (*Id.* ¶ 26.)  Upon being shot in the eye, Castellanos experienced a loss of vision and excruciating pain.  (*Id.* ¶ 26.)  Castellanos was transported by his father to the emergency room at "approximately 3:00 a.m. on October 28, 2020[,]" where he was treated for a "traumatic injury to his eye with central loss of vision and persistent mydriasis (dilated pupils)."  (*Id.* ¶ 30.)

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

The officers involved in the shooting were Officer MacArthur and Officer Pineda, who both allegedly fired a LLM projectile toward Castellanos. (*Id.* ¶ 27.)  One of the two alleged LLM projectiles fired by Officer MacArthur and Officer Pineda struck Castellanos in the eye.  (*Id.* ¶ 27.)  Lieutenant Jenal was the supervising LAPD officer who authorized the use of LLMs at the time Castellanos was injured.  (*Id.*)

On February 27, 2023, Castellanos filed a FAC against Defendants asserting seven causes of action: (1) violation of Castellanos's right to free speech and assembly under the First and Fourteenth Amendments, 42 U.S.C. § 1983, and California Constitution, Article I, sections 2–3; (2) unlawful seizure and excessive force under the Fourth and Fourteenth Amendments, 42 U.S.C. § 1983, and California Constitution, Article I, section 13; (3) violation of substantive due process under the Fourteenth Amendment, 42 U.S.C. § 1983, and California Constitution, Article I, section 13; (4) violation of the Bane Civil Rights Act under California Civil Code section 52.1; (5) assault under the California Tort Claims Act; (6) battery under the California Tort Claims Act; and (7) negligence under the California Tort Claims Act. (*See* FAC ¶¶ 74–132.)

Defendant Officers, in their individual capacity, now move for judgment on the pleadings—or alternatively for partial summary judgment—as to the federal claims contained within Castellanos's first, second, and third causes of action.[2]  (Mot. 2, 6–7.)  Specifically, Defendant Officers seek partial judgment regarding Castellanos's claims under the First, Fourth, and Fourteenth Amendments.  (Mot. 2, 6–7.)  Defendant Officers seek relief on the sole ground of qualified immunity.  (*Id.*)

### III.   LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  Judgment on the

---

[2] Castellanos also makes various *Monell* allegations based upon the principles established in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).  However, these allegations are neither presently disputed nor relevant to the current Motion before the Court.

pleadings is appropriate "when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios*, 896 F.2d at 1550. In general, courts may not consider matters outside the pleadings on a Rule 12(c) motion without treating it as a motion for summary judgment. Fed. R. Civ. P. 12(d); *Hal Roach Studios*, 896 F.2d at 1550.

When ruling on a motion for judgment on the pleadings, "[a]ll allegations of fact by the party opposing the motion are accepted as true" and construed in the light most favorable to that party. *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). However, "conclusory allegations without more are insufficient" to withstand a motion for judgment on the pleadings. *Id.* "As a result, a plaintiff is not entitled to judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery." *Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989).

If judgment on the pleadings is appropriate, a court has discretion to grant the non-moving party leave to amend, grant dismissal, or enter a judgment. *See Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) ("[Leave to amend] is properly denied . . . if amendment would be futile.").

## IV.   DISCUSSION

Defendant Officers move for judgment on the pleadings on the sole ground of qualified immunity. Qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). Qualified immunity is

analyzed under a two-prong inquiry. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson*, 555 U.S. at 236. In determining whether a government official is entitled to qualified immunity, courts consider: (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct. *Pearson*, 555 U.S. at 232.

Defendant Officers argue their actions are protected from civil liability because Castellanos's claims fail to meet the second prong of the qualified immunity test. (Mot. ¶ 11.) Under the second prong of qualified immunity, plaintiffs must prove "that the right allegedly violated was clearly established at the time of the alleged misconduct." *Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991). More specifically, Defendant Officers argue Castellanos's rights under the First, Fourth, and Fourteenth Amendments were not clearly established at the time they discharged the LLMs and therefore the officers had no fair warning that their conduct was unlawful or in violation of those rights. (*Id.*) A right is "clearly established" when the law relating to that right "was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Reichle v. Howards*, 566 U.S. 658, 664 (2012); *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (internal quotation marks omitted). When disputing the second prong of qualified immunity, Courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

For purposes of this Motion, there is no dispute between parties regarding the first prong. (*See* Mot. 2; Opp'n 10.) As such, the Court will only address the second prong of qualified immunity and whether Castellanos's rights were "clearly established" at the time. The Court will address the disputed federal claims in the following order: (1) excessive force; (2) free speech and assembly; and (3) substantive due process.

**A.    Excessive Force**

Castellanos asserts a Fourth and Fourteenth Amendment excessive force claim under 42 U.S.C. § 1983, against Defendant Officers for shooting LLMs and striking Castellanos in the eye while Castellanos was unarmed and peacefully celebrating the LA Dodgers World Series Championship victory.  (FAC ¶ 84–91.)  Defendant Officers argue they are protected from civil litigation because Castellanos has failed to demonstrate that his Fourth Amendment right was clearly established at the time of the Defendant Officers' alleged misconduct.  (Mot. ¶ 11.)

Castellanos, in turn, relies on *Nelson v. City of Davis* 685 F.3d 867, 884 (9th Cir. 2012)[3] to assert that the law was sufficiently clear at the time of Defendant Officers' alleged misconduct.  (Opp'n ¶¶ 9–10.)  In *Nelson*, police officers fired LLMs to disperse a crowd of approximately twenty students in an apartment complex resulting in one student being struck in the eye with an LLM round.  *Nelson*, 685 F.3d at 874.  The plaintiff, who was shot in the eye, suffered permanent eye damage and sued the City of Davis over his injuries.  *Id.*

The Ninth Circuit made multiple findings in their qualified immunity analysis that are relevant to the instant action.  *Id.* at 883–884.  First, "[a]n officer is not entitled to qualified immunity on the ground[ ] that the law is not clearly established every time a novel method is used to inflict injury."  *Id.* (citing *Deorle v. Rutherford*, 272 F.3d 1272, 1285–86 (9th Cir. 2001)); *see Deorle*, 272 F.3d at 1285–86 (holding officers who fired a beanbag projectile at an unarmed man—who posed a minimal risk to officers—and struck him in the eye, were not protected by qualified immunity).  Second, "prior [Ninth Circuit] cases provided notice to all reasonable officers that targeting [plaintiff] and his group with a projectile weapon with concussive force that could cause serious physical injury . . . was unreasonable under the Fourth Amendment."  *Id.* at 884–885.  Third, a "reasonable officer" would have been on

---

[3] To demonstrate the existence of a clearly established right, Castellanos also cites to *Deorle v. Rutherford*, 272 F.3d 1272, 1285–86 (9th Cir. 2001).  However, the Court finds *Nelson* more directly applicable to the current set of factual allegations and therefore focuses its analysis only on *Nelson*.

notice that "the firing of a projectile that risked causing serious harm, in the direction of non-threatening individuals who had committed at most minor misdemeanors . . . would constitute unreasonable force in violation of the Fourth Amendment." *Id.* at 886.

In the present case, Castellanos's factual allegations are similar to the facts in *Nelson*. In both cases, a crowd of individuals gathered peacefully following a celebration. (FAC ¶¶ 2, 23–25); Nelson, 685 F.3d at 874. Similarly, both sets of officers were dispatched to the gathering area and began firing LLMs into the crowd to disperse all individuals. *Id.* Moreover, neither Castellanos nor the plaintiff in *Nelson* presented a threat to the deployed officers. *Id.* Finally, Castellanos and the plaintiff in *Nelson* were both struck in the eye by an LLM. *Id.* Thus, the factual circumstances are decidedly similar.

Defendant Officers make an attempt at distinguishing *Nelson* from the instant action by arguing: (1) the number of students in *Nelson* was far less than the number of individuals celebrating the Dodgers World Series Championship; (2) the students in *Nelson* were "non-threatening individuals"; and (3) the *Nelson* students did not throw a glass bottle at the police officers. (Reply 8–9.) The Court does not find these distinguishing facts compelling. The demographics and size of the gathered crowd are not dispositive factors. Additionally, even assuming *arguendo* that crowd demographics *were* considered, the factual allegations appear to be less favorable to the Defendant Officers. Castellanos was a student at the time of his injury, the exact demographic Defendant Officers argue was "non-threatening." (FAC ¶ 7); (Reply 8.) Furthermore, the crowd that Defendant Officers fired their LLM weapons into was also comprised of *children*, a decidedly far less threatening group than the students in *Nelson*. (*Id.* ¶ 23.)

That said, it is clear the precedent set by *Nelson* focused on the use of LLMs against unarmed, peaceful individuals. Interpreting the present factual allegations in the light most favorable to Castellanos, the Court determines the Ninth Circuit's

conclusions made in *Nelson* apply to the present situation. Most notably, reasonable officers would have been on notice that firing projectiles, which risk serious harm, in the direction of non-threatening individuals would constitute unreasonable force. As such, the Court finds Defendant Officers were on notice of the clearly established precedent regarding Castellanos's Fourth and Fourteenth Amendment right against excessive force.

Accordingly, the Court **DENIES** Defendant Officers' Motion for Judgment on the Pleadings as to Castellanos's Fourth and Fourteenth Amendment excessive force claim.

**B.    Free Speech & Assembly**

Castellanos asserts a First and Fourteenth Amendment free speech and assembly claim under 42 U.S.C. § 1983, against Defendant Officers for discharging LLMs and striking him in the eye while he was engaged in a peaceful assembly, in violation of his First Amendment rights. (FAC ¶¶ 84–91.) Defendant Officers argue they are protected from civil litigation because Castellanos has failed to meet the second prong of qualified immunity. (Mot. ¶ 11.) The Court determines Castellanos has indeed failed to meet his burden under the second prong of qualified immunity.

Under the second prong of qualified immunity, plaintiffs must prove that "at the time of" the officers' allegedly unconstitutional actions, "the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (internal quotation marks omitted). In the present case, Castellanos cites a string of cases[4] relating to First Amendment free speech and assembly, but only one that is relevant to qualified

---

[4]Castellanos cites to various cases that are related to First Amendment issues, but none that are relevant to the current discussion of qualified immunity in the context of law enforcement officers firing LLMs at unarmed individuals. *See, e.g.*, *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 152 (1969) (holding that a city ordinance making it an offense to participate in any parade, procession, or other public demonstration led to the denial of unwarranted abridgment of petitioner's First Amendment rights); *Index Newspapers LLC v. City of Portland*, 480 F. Supp. 3d 1120 (D. Or. 2020) (finding that local and federal law enforcement officers could not target and use physical force against journalists and legal observers who were documenting protests in Portland.)

immunity in the context of chilling or prohibiting the right to peacefully assemble. (Opp'n 16 (citing *Collins v. Jordan*, 110 F.3d 1363, 1372 (9th Cir. 1996)).) In *Collins*, approximately four-to-five-hundred people were arrested in San Francisco for peacefully demonstrating following the Rodney King criminal jury trial verdict. *Collins*, 110 F.3d at 1366–67. The arrested protestors filed a class action against the City of San Francisco and various political and law enforcement officials in their individual capacities. *Id.* Castellanos cites the following quote from *Collins* in an attempt to conform the Ninth Circuit's findings to the current set of facts, "[t]he courts have held that the proper response to potential and actual violence is for the government to ensure an adequate police presence, and to arrest those who actually engage in such conduct, rather than to suppress legitimate First Amendment conduct as a prophylactic measure." (Opp'n 16 (internal citation omitted) (citing *Collins*, 110 F.3d at 1372). Defendant Officers argue the facts in *Collins* are not analogous to the instant action and therefore Castellanos did not meet his burden to show "the constitutional question at issue in this case was clearly established." (Reply 13.)

As a preliminary matter, the Court does not require Castellanos to provide a "mirror image" case involving identical facts to clearly establish unlawful conduct. *See S.B. v. Cnty. of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017) ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."). However, the material facts in *Collins* and the factual allegations in the instant action are plainly distinct. *Collins* addresses mass arrests and the unlawful detention of approximately five hundred peaceful protestors, *Collins*, 110 F.3d at 1366–67, whereas the factual allegations in the instant case involve LLMs being improperly fired at unarmed individuals to disperse crowds, (FAC ¶¶ 21, 25). Thus, the Court finds Collins does not clearly establish precedent demonstrating Defendant Officers were on notice of any alleged unlawful use of LLMs to disperse crowds.

Accordingly, the Court **GRANTS** Defendant Officers' Motion for Judgment on

the Pleadings as to Castellanos's First and Fourteenth Amendment right to free speech and peaceful assembly claim.

## C.    Substantive Due Process

Castellanos asserts a singular Fourteenth Amendment substantive due process violation claim under 42 U.S.C. § 1983, against Defendant Officers because firing LLMs and striking Castellanos in the eye, while he was peacefully celebrating, was so egregious it shocks the conscience.    (FAC ¶ 92–99.)    Defendant Officers argue Castellanos has not met the second prong burden to invalidate qualified immunity for this claim.    The Court finds that Castellanos has again failed to meet his burden under the second prong of qualified immunity.

As discussed above, under the second prong of qualified immunity, plaintiffs bear the "burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct."    *Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991).    While there need not be a case directly on point, the existing case precedent must at least "have placed the statutory or constitutional question beyond debate."    *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).    Castellanos relies solely upon *Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998) to support his claim that his Fourteenth Amendment right to substantive due process was clearly established at the time of his injury.    (Opp'n 17.)    In *Lewis*, the Supreme Court determined high speed police chases "with no intent to harm suspects physically do not give rise to liability under the Fourteenth Amendment."    *Lewis*, 523 US at 854.    Defendant Officers argue Castellanos's reliance on *Lewis*, is misplaced as it is not analogous to the factual allegations of the instant action.    (Reply 12.)    While the Court does not require Castellanos to cite cases that are factually identical, *Lewis* does not relate to the present factual scenario even when the factual allegations are viewed in the light most favorable to Castellanos.    As such, the Court finds Castellanos did not clearly establish the unlawfulness of the officers' conduct in regard to his Fourteenth Amendment substantive due process rights.

Accordingly, the Court **GRANTS** Defendant Officers' Motion for judgment on the pleadings as to Castellanos's Fourteenth Amendment right to substantive due process claim.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant Officers' Motion for Judgment on the Pleadings. Specifically, the Court grants the Motion as to Castellano's First and Fourteenth Amendment right to free speech and peaceful assembly claim and his Fourteenth Amendment right to substantive due process claim. The Court denies the Motion as to Castellanos's Fourth and Fourteenth Amendment excessive force claim.

Additionally, the Court **DENIES AS MOOT** Defendant Officers' alternative request for partial summary judgment as to Castellanos's First and Fourteenth Amendment claims. Furthermore, the Court **DENIES** Defendant Officers' alternative request for partial summary judgment as to Castellanos's Fourth and Fourteenth Amendment claim as premature due to ongoing fact discovery and genuine disputes of material fact.

**IT IS SO ORDERED.**

March 12, 2024

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

11