O

# United States District Court
# Central District of California

ISAAC CASTELLANOS,

Plaintiff,

v.

CITY OF LOS ANGELES et al.,

Defendants.

Case № 2:22-cv-01165-ODW (GJSx)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [97]**

## I.    INTRODUCTION

Plaintiff Isaac Castellanos brings this action for alleged civil rights violations against Defendants City of Los Angeles ("City"), Chief Michel Moore ("Chief Moore"), Lieutenant John Jenal ("Lt. Jenal"), Officer Cody MacArthur ("Officer MacArthur"), and Officer Jesse Pineda ("Officer Pineda") (collectively, "Defendants"). (First Am. Compl. ("FAC"), ECF No. 35.) Defendants move for summary judgment. (Mot. Summ. J., ECF No. 97; Mot. Leave Refile Mot. Summ. J. Ex. A ("Mot." or "Motion"), ECF No. 101.[1]) For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion.[2]

---

[1] The updated motion for summary judgment attached to Defendants' motion for leave to refile is the operative Motion.

[2] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.    BACKGROUND[3]

On October 28, 2020, between 12:45 a.m. to 1:10 a.m.,[4] Castellanos and a group of his friends gathered in Downtown Los Angeles, near the intersection of 11th Street and Hope Street, to celebrate the Dodgers' World Series victory with other excited fans.  (SUF ¶¶ 1, 10, ECF No. 98; AMF ¶¶ 1–2, ECF No. 112.[5])

Earlier that evening, at 9:27 p.m., Chief Vito Palazzolo, the designated Incident Commander, declared an unlawful assembly.  (SUF ¶¶ 3, 55.)  Defendants assert that officers gave dispersal orders throughout the city using helicopters, sound trucks, and megaphones, (*id.* ¶ 4), but Castellanos disputes any such orders were given around 11th Street and Hope Street, (SGD ¶ 4, ECF No. 112).  At approximately 12:32 a.m., the Incident Commander authorized the use of the 37mm less lethal munition ("37 LLM") weapon system to disperse crowds.  (SUF ¶ 7.)

Los Angeles Metro Tactical Support Elements ("TSE") and Mobile Field Force squads were present on stand-by in Downtown Los Angeles to control and disperse the crowd.  (*Id.* ¶¶ 8, 59.)  Lt. Jenal oversaw TSE Number 1 ("TSE 1") and was to assess the situation and make tactical decisions regarding crowd dispersal and arrests.  (*Id.* ¶ 58, 61; AMF ¶¶ 45–46; Decl. Muna Busailah ISO Mot. ("Busailah Decl.") Ex. 3 ("Jenal Dep. Tr.") 64:21–23, ECF No. 97-4.)

At approximately 1:03 a.m., TSE 1, including Officers MacArthur and Pineda, arrived mid-block on Hope Street facing south towards 11th Street.  (SUF ¶ 19; AMF ¶ 6.)  Officers MacArthur and Pineda were armed with the 37 LLM weapon system.  (SUF ¶ 9; AMF ¶ 23.)

---

[3] The Court derives the factual background, some of which is disputed, from the parties' Statements of Uncontroverted Facts ("SUF"), Statements of Genuine Disputes ("SGD"), Additional Statements of Material Facts ("AMF"), and responses thereto, in addition to the parties' clearly and specifically cited evidence.  *See* C.D. Cal. L.R. 56-1 to 56-4.

[4] While this date and time is undisputed, Castellanos claims that he was present in Downtown Los Angeles at 12:45 a.m. on October 27, 2020.  (AMF ¶ 1.)  This appears to be a typographical error.  (*See* FAC ¶ 23 (alleging that the Dodgers won the World Series on the night of October 27, 2020, after which Castellanos joined celebrations in Downtown Los Angeles).)

[5] Castellanos submits a combined SGD and AMF; the AMF begins on page 52.  (*See* ECF No. 112).

Shortly after TSE 1 arrived, an unknown person—not Castellanos or his friends—threw a bottle towards TSE 1, which landed roughly fifteen feet from Officer Pineda.  (SUF ¶ 20; AMF ¶¶ 15, 17, 19; Busailah Decl. Ex. 5 ("Pineda Dep. Tr.") 119:4–7, ECF No. 97-6.)   In police bodycam, glass can be heard shattering nearby a few seconds after the bottle landed.  (Busailah Decl. Ex. 12 ("Aranda Bodycam") 1:03:38, ECF Nos. 97, 99; AMF ¶ 18; SUF ¶ 21.)  TSE 1 then called "less lethal up," and Officers MacArthur and Pineda advanced across the skirmish line towards the intersection of Hope Street and 11th Street.  (SUF ¶¶ 22–23, AMF ¶ 21.)

Within 0.07 seconds of each other, Officers MacArthur and Pineda, holding their weapons in a near horizontal position, each fired a 37 LLM shot into the intersection in the direction of the crowd, from approximately 140 to 145 feet away from the southeast corner of 11th Street and Hope Street.  (SUF ¶ 24; AMF ¶ 26, 32, 34, 40, 42.)  Officer MacArthur shot towards the southeast corner and Officer Pineda shot towards the unknown "bottle thrower(s)."  (AMF ¶¶ 33, 39.)  Cars were in the intersection when the officers fired.  (AMF ¶ 41; Decl. Matthew P. French ISO Opp'n ("French Decl.") Ex. 32 ("Aranda Bodycam Screenshot"), ECF No. 107-32 (showing two cars in the intersection when shots fired).)  Each shot discharged five foam baton rounds.  (SUF ¶ 40.)  Defendants assert that the officers aimed at the area five to ten feet "in front of the crowd," using the "skip fire"[6] method.  (*Id.* ¶ 25; Busailah Decl. Ex. 4 ("MacArthur Dep. Tr.") 145:11–25, ECF No. 97-5; Pineda Dep. Tr. 131:8–12.)  Castellanos disputes this, contending that the officers fired either directly at the crowd, based on the angle of the muzzle, or fired over or under the vehicles.  (SGD ¶¶ 25, 45; French Decl. Ex. 20 ("MacArthur Dep. Tr. 2") 196:8–197:23, ECF No. 107-20.)

Castellanos was standing at the southeast corner of 11th Street when he noticed TSE 1 and, at that point, started to run away with the crowd.  (AMF ¶ 20; SUF ¶ 49.)

---

[6] The "skip-fire" method aims at the ground five to ten feet in front of a ground and does not target a person.  (AMF ¶ 58; SUF ¶ 41–42.)

He turned back to grab one of his friends. (SUF ¶ 49.) When the officers fired the 37 LLM shots, Castellanos was hit by an object in his right eye. (AMF ¶¶ 27–28.)

On February 21, 2022, Castellanos filed this suit against Defendants. (Compl., ECF No. 1.) On February 27, 2023 Castellanos filed the First Amended Complaint alleging the following causes of action against all Defendants: (1) violation of his right to free speech and assembly under the First and Fourteenth Amendments, 42 U.S.C. § 1983, and California Constitution, Article I, sections 2–3; (2) unlawful seizure and excessive force under the Fourth and Fourteenth Amendments, § 1983, and California Constitution, Article I, section 13; (3) violation of his substantive due process under the Fourteenth Amendment, § 1983, and California Constitution, Article I, section 13; (4) violation of the Bane Civil Rights Act under California Civil Code section 52.1; (5) assault; (6) battery; and (7) negligence. (FAC ¶¶ 74–132.)

On August 17, 2023, Lt. Jenal, Officer MacArthur, and Officer Pineda (collectively, "TSE Defendants") moved for judgment on the pleadings on the first three counts based on qualified immunity. (Mot. J. Pleadings, ECF No. 52.) The Court granted the motion in part and dismissed Castellanos's first and third causes of action against TSE Defendants. (Order Mot. J. Pleadings 11, ECF No. 94.)

Defendants now move for summary judgment. (Mot.) The Motion is fully briefed. (Opp'n, ECF No. 105; Reply, ECF No. 113.)

## III.    LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" where it might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once the moving party satisfies its initial burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see Celotex*, 477 U.S. at 324. The non-moving party must show that there are "genuine factual issues that . . . may reasonably be resolved in favor of either party." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (emphasis omitted) (quoting *Anderson*, 477 U.S. at 250). Courts should grant summary judgment against a party who fails to make a sufficient showing on an element essential to her case when she will ultimately bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23.

In ruling on summary judgment motions, courts "view the facts and draw reasonable inferences in the light most favorable" to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks omitted). Conclusory, speculative, or "uncorroborated and self-serving" testimony will not raise genuine issues of fact sufficient to defeat summary judgment. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

The Court may assume that material facts claimed and adequately supported are undisputed except to the extent that such material facts are (a) included in the opposing party's responsive statement of disputes *and* (b) controverted by declaration or competent written evidence. C.D. Cal. L.R. 56-4. "The Court is not obligated to look any further in the record for supporting evidence other than what is actually and specifically referenced . . . ." *Id.*

## IV.   PRELIMINARY MATTERS

The Court first addresses the parties' evidentiary objections and unopposed dismissal of claims.

### A.   Evidentiary Objections

The parties raise numerous evidentiary objections.  (*See* SGD; Defs.' Resp. SGD & AMF, ECF No. 114; Opp'n 3.)

As a preliminary matter, any evidentiary objections not set forth in a "separate memorandum" that "identif[ies] the specific item of evidence to which objection is made, the ground for the objection, and a very brief argument with citation to authority as to why the objection is well taken" are in violation of the Court's Scheduling and Case Management Order ("Case Order") and the Court therefore disregards them.  (Case Order 8, ECF No. 21.)

Next, the Court **OVERRULES** all boilerplate objections based on relevance, lack of foundation, unfair prejudice, hearsay, and improper legal argument. Relevance- and foundation-based objections are duplicative in the summary judgment context.  *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006).  Objections under Federal Rule of Evidence 403 are also "unnecessary at the summary judgment stage because there is no jury that can be misled and no danger of confusing the issues."  *Ward v. Crow Vote LLC*, 634 F. Supp. 3d 800, 808 (C.D. Cal. 2022), *aff'd*, No. 22-56108, 2024 WL 2239010 (9th Cir. May 17, 2024).  As for hearsay, a court may not *grant* a summary judgment motion on the basis of hearsay evidence, but it may *deny* a summary judgment motion on the basis of hearsay evidence as long as it finds that the hearsay evidence *would be admissible* at trial. Fed. R. Civ. P. 56(e); *Fraser v Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003). The Court also disregards all improper arguments and statements of law.  (*See* Case Order 7–9.)

Further, much of the material to which the parties object is unnecessary to the resolution of the Motion and the Court need not resolve those objections.  To the

extent the Court relies on objected-to evidence in this order without further discussion, those objections have been thoroughly considered and are **OVERRULED**.  *See Burch*, 433 F. Supp. 2d at 1122 (proceeding with only necessary evidentiary rulings).

**B.      Non-Opposition to Dismissal**

In his Opposition, Castellanos expresses that he does not oppose dismissal of his first cause of action against Chief Moore and the City, and his claims against Chief Moore in his official and individual capacity.  (Opp'n 20 n.7, 26.)  Castellanos does not specify whether he does not oppose dismissal with or without prejudice.  (*See id*.)  In response, Defendants seek dismissal of these claims with prejudice.  (Reply 1.)

Once a motion for summary judgment has been filed, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper," with exceptions not present here.  Fed. R. Civ. P. 41(a)(2).  The Court may, in its sound discretion, elect to dismiss claims once a plaintiff has expressed a desire to voluntarily dismiss them.  *See Abu-Lughod v. Calis*, No. 2:13-cv-02792-DMG (RZx), 2015 WL 12745842, at *1–2 (C.D. Cal. Apr. 6, 2015) (dismissing claims with prejudice when plaintiff elected for voluntary dismissal in his opposition to defendant's motion for summary judgment and "interposed no objection to dismissal with prejudice at the summary judgment hearing"); *Hope v. City of Long Beach*, No. 2:04-cv-04249-DT (RZx), 2005 WL 6009954, at *5 (C.D. Cal. Aug. 15, 2005) (dismissing claims with prejudice on a motion for summary judgment when plaintiff did not oppose dismissal).

Based on the above, the Court **DISMISSES with prejudice** Castellanos's first cause of action[7] and all claims as against Chief Moore.

## V.      DISCUSSION

Following the Court's order on the motion for judgment on the pleadings and dismissal pursuant to Rule 41(a)(2), Castellanos's remaining causes of action are: the

---

[7] The Court previously granted judgment on the pleadings in favor of TSE Defendants on this cause of action, (Order Mot. J. Pleadings 8–11), and it survived only against the City and Chief Moore. Accordingly, this dismissal results in a dismissal of the first cause of action in its entirety.

second, fourth, fifth, sixth, and seventh causes of action against the City and TSE Defendants, and third cause of action against the City.

## A. Excessive Force (Second Cause of Action)—TSE Defendants

Defendants move for summary judgment on Castellanos's excessive force claim against TSE Defendants on four grounds: (1) the officers' use of force was reasonable; (2) Castellanos cannot establish that the officers' conduct was the actual or proximate cause of his injury; (3) Castellanos cannot establish supervisory liability against Lt. Jenal; and (4) TSE Defendants are insulated by qualified immunity.[8]  (Mot. 5–14, 21–22.)

### 1. Reasonableness of Force—Officer MacArthur and Officer Pineda

Defendants first contend that Officer MacArthur's and Officer Pineda's force was reasonable as a matter of law.  (Mot. 11.)

"An excessive force claim is a claim that a law enforcement officer carried out an unreasonable seizure through a use of force that was not justified under the relevant circumstances."  *County of Los Angeles v. Mendez*, 581 U.S. 420, 428 (2017).  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Courts assess reasonableness using the *Graham* factors: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id*.  These factors are not exclusive and are considered under "the totality of the circumstances" to determine "whether the severity of force applied was balanced by the need for such force."  *Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011).  This is "a highly fact-intensive task."  *Id*.  "Where the objective

---

[8] In a footnote, Defendants also argue that the officers' conduct is not a Fourth Amendment seizure. (Mot. 7 n.1.)  As "[a]rguments raised only in footnotes, or only on reply, are generally deemed waived," the Court declines to consider this argument.  *Est. of Saunders v. Comm'r*, 745 F.3d 953, 962 n.8 (9th Cir. 2014).

8

reasonableness of an officer's conduct turns on disputed issues of material fact, it is 'a question of fact best resolved by a jury.'" *Id.* at 1123.

Here, only the first *Graham* factor is relevant as it is undisputed that Castellanos did not pose an immediate threat to the officers' safety and the officers did not attempt to arrest Castellanos. And this first factor, the severity of the crime at issue, disfavors reasonableness. Castellanos was with a group of friends celebrating the Dodgers' World Series victory at the intersection of 11th Street and Hope Street. (AMF ¶ 1.) TSE 1 did not give dispersal orders when they arrived at 11th Street and Hope Street. (AMF ¶¶ 8–9.) While the parties dispute whether the crowd at 11th Street and Hope Street lit fireworks or conducted "burn-outs," (SGD ¶ 18), it is undisputed that Castellanos did not take part in those activities, if any. It is also undisputed that Castellanos did not throw anything at the officers. (AMF ¶¶ 15, 19.) Moreover, Castellanos attempted to leave with the crowd when he saw the officers. (*Id.* ¶ 20.) To the extent Castellanos may have committed any crime, the severity of Castellanos' crime was minimal and diminishes the need for use of force.

Defendants rely on *Felarca v. Birgeneau*, 891 F.3d 809 (9th Cir. 2018) to contend that the officers' force was reasonable because they "faced a mass of unruly persons that substantially outnumbered the officers." (Mot. 12.) But the facts in *Felarca* are not analogous. In *Felarca*, the court concluded that the officers' use of batons to disperse a crowd was not excessive when the officers gave dispersal orders and the plaintiffs, despite hearing them, refused to leave. 891 F.3d at 816–17. Here the officers did not give dispersal orders at 11th Street and Hope Street. (AMF ¶ 8.) Defendants point to unruly conduct throughout the evening and in other areas across Downtown Los Angeles, (SUF ¶¶ 4–5), but "the general disorder of the [area] cannot be used to legitimize the use of . . . projectiles against non-threatening individuals," *Nelson v. City of Davis*, 685 F.3d 867, 881 (9th Cir. 2012). The version of events presented by both sides shows that there is at least a dispute of fact that Castellanos was not unruly—he contends he did not hear dispersal orders, did not throw the bottle

at the officers, and attempted to leave with the crowd. (French Decl. Ex. 1 ("Castellanos Dep. Tr.") 27:16–22, ECF No. 107-1; AMF ¶¶ 8, 19–20.)

Castellanos also raises a genuine issue of material fact as to the severity of the force used. Specifically, Castellanos disputes that Officers MacArthur and Pineda used a skip-fire method when they discharged the 37 LLM towards the crowd. (SGD ¶ 25.) He points to evidence that the officers held their barrels at a near horizontal position when they fired and that there were cars in the intersection. (AMF ¶ 40; Aranda Bodycam Screenshot.) Whether the officers fired the 37 LLM directly at the crowd or at the ground using the skip-fire method is material to determine the objective reasonableness of the officers' conduct. Considering Castellanos's minimal criminal conduct, if any, a reasonable jury could find discharging the 37 LLM directly at the crowd to be excessive.

Accordingly, the evidence viewed in the light most favorable to Castellanos could support a finding of excessive force, and there is a genuine dispute of a material fact what firing method the officers used. Defendants are thus not entitled to summary judgment on this basis. *See Torres*, 648 F.3d at 1123 ("[O]nly in the absence of material disputes is it a 'pure question of law.'").

*2.    Causation—Officer MacArthur and Officer Pineda*

In a § 1983 action, the plaintiff must demonstrate that the defendant's conduct is both the cause-in-fact and proximate cause of the claimed injury. *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008). Defendants argue that Castellanos cannot establish that a 37 LLM fired by either Officer MacArthur or Officer Pineda caused his injury, and that the harm was foreseeable. (Mot. 5–11.)

a.    Whether the 37 LLM caused the injury

Defendants first assert that Castellanos cannot establish that a 37 LLM caused his injury because Castellanos "does not know the object that allegedly struck his eye." (Mot. 7–8.) Not so.

It is undisputed that Castellanos "felt an impact to his right eye when the shots were fired." (AMF ¶ 27; *accord* SUF ¶ 26.) Castellanos asserts that he was struck in the eye by a rubber bullet. (Castellanos Dep. Tr. 46:19–22.) A witness, Julius Sengnouanchanh, testified that after hearing a "loud pop," he saw Castellanos "cover his eye" and saw "something got in it." (French Decl. Ex. 8 ("Sengnouanchanh Dep. Tr.") 24:15–20, ECF No. 107-8.) Castellanos also submits a medical record showing he complained of an eye injury from "getting hit with [a] rubber bullet." (French Decl. Ex. 47 ("Memorial Care Medical Report") 3, ECF No. 107-47.) Such circumstantial evidence is sufficient to raise a genuine dispute of material fact on the issue of whether the 37 LLM is the but-for cause of Castellanos's injuries. *See, e.g.*, *McCrae v. City of Salem*, No. 6:20-cv-01489-MC, 2022 WL 833213, at *5 (D. Or. Mar. 21, 2022) (finding the plaintiff "counter[ed] with enough circumstantial evidence to support an inference that she was hit with a rubber bullet").

Defendants' evidence supports, rather than controverts, Castellanos's assertions. For example, Defendants rely on a medical report from Kaiser Permanente to show that Castellanos "told medical providers he was struck by an unknown object." (SUF ¶ 30 (citing Busailah Decl. Ex. 14 ("Kaiser Medical Report"), ECF No. 97-11).) However, that same medical report states that "[o]ne of the rubber bullet [sic] struck the patient in the right eye." (Kaiser Medical Report 20.) Defendants thus fail to present evidence to rebut the existence of a genuine dispute. *See* C.D. Cal. L.R. 56-3. Therefore, Defendants are not entitled to summary judgment on this basis.

### b.  Which officer caused the injury

Defendants next move for summary judgment on the grounds that Castellanos cannot show whether Officer MacArthur or Officer Pineda deployed the 37 LLM that struck him. (Mot. 7–9.)

Section 1983 liability "arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). A person deprives another "of a constitutional right, within the meaning of section 1983, if he

does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Citing *Sanchez v. City of Atherton*, No. 22-cv-03106-JSW, 2023 WL 137475 (N.D. Cal. Jan. 9, 2023), Defendants argue that Castellanos must identify the specific officer that caused his harm. (Mot. 9.)  But *Sanchez* is inapposite.  In *Sanchez*, the court granted the defendant's motion to dismiss because plaintiff "cannot allege which of [the officers] deployed the injury-causing round."  2023 WL 137475, at 4.  In its reasoning, the court noted that the plaintiff "does not allege that he was in close proximity to any of the [d]efendants, that he interacted with them prior to his injury, and he does not offer any details that would permit a causal inference."  *Id.* at 3.  In contrast, Castellanos offers evidence to support that both Officers MacArthur and Pineda individually participated in deploying the 37 LLM that Castellanos claims caused his injury.  (AMF ¶ 26–27; French Decl. Ex. 17 ("Stabilized Martinez Bodycam"), ECF No. 107-17.)

Every officer who participated in a "meaningful way" in the events constituting the claimed violation may be liable. *Nelson v. City of Davis*, 709 F. Supp. 2d 978, 987 (E.D. Cal. 2010), *aff'd*, 685 F.3d 867 (9th Cir. 2012).  "The fact that the [37 LLM] that hit [Castellanos] necessarily came from only one of the officers does not . . . necessarily absolve everyone from liability since [Castellanos] cannot show which officer fired the bullet that struck him." *Id.*  Police bodycam shows that Officers MacArthur and Pineda each fired one 37 LLM shot towards the crowd within 0.07 seconds of each other, and each round deployed five foam batons. (Stabilized Martinez Bodycam; AMF ¶ 26; SUF ¶ 40.)  Castellanos was struck when the shots were fired. (AMF ¶ 27.)  Viewing the evidence in favor of Castellanos, a reasonably jury could find either Officer MacArthur or Officer Pineda, or both, to be liable for deploying the 37 LLM responsible for causing Castellanos's injury.  Defendants thus

fail to show there is no dispute of material fact on this issue. Thus, summary judgment is not appropriate on this basis.

### c. Whether the injury was foreseeable

Defendants next argue that Castellanos's injury was not foreseeable and that the proximate cause between the officers' "deployment of the 37 LLM and [Castellanos's] injury is too 'attenuated that the consequence is more aptly described as mere fortuity.'" (Mot. 10 (quoting *Chaudhry v. Aragon*, 68 F.4th 1161, 1169 n.12 (9th Cir. 2023)).) The Court disagrees.

The proximate cause analysis considers the "foreseeability or the scope of the risk created by the predicate conduct," and requires "some direct relation between the injury asserted and the injurious conduct alleged." *Mendez*, 581 U.S. at 431. Here, the predicate conduct is shooting 37 LLM toward a crowd. As the parties dispute whether the officers discharged the weapon at the ground using the skip-fire method, or directly at the cars and people in the intersection, the resulting proximate cause inquiry is a factual question more properly left for a jury. This dispute is material and will influence whether the resulting injury is foreseeable. When, as here, "reasonable persons could differ [on the issue of foreseeability], summary judgment is inappropriate and the question should be left to a jury." *White v. Roper*, 901 F.2d 1501, 1506 (9th Cir. 1990). Therefore, Defendants are not entitled to summary judgment on this basis.

### 3. Supervisory Liability—Lt. Jenal

Defendants separately argue that Lt. Jenal is not liable because Castellanos cannot establish a causal connection between Lt. Jenal's supervisory conduct and the injury. (Mot. 14–16, 18–21.)

"A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (internal

quotation marks omitted).  "A sufficient causal connection requires that the supervisor either set in motion or knowingly refused to terminate acts by others which he knew or had reason to know inflict constitutional injury."  *Fortson v. City of Los Angeles*, 628 F. Supp. 3d 976, 990 (C.D. Cal. 2022).

Castellanos provides no evidence to support a causal connection between Lt. Jenal and the alleged constitutional violations.  Lt. Jenal was still in his vehicle when the skirmish line moved toward 11th Street and Hope Street, (AMF ¶ 50), and he did not command the officers to fire the 37 LLM, (SUF ¶ 63).  It is undisputed that, "[a]bsent exigent circumstances, . . . only the Incident Commander will approve the deployment of less-lethal munitions such as the 37mm," and Lt. Jenal was not the Incident Commander.  (*Id.* ¶¶ 53, 58.)  Castellanos argues that Lt. Jenal failed to control or prevent the situation.  (Opp'n 28.)  Even so, there is insufficient evidence to show a causal connection between Lt. Jenal's failure to control and the resulting injury when the Incident Commander—not Lt. Jenal—had the primary authority to approve and did approve the use of the 37 LLM.  Even from a point of view most favorable to Castellanos, there is no genuine dispute of material fact that Lt. Jenal did not set into motion the conduct that harmed Castellanos.  *See Fortson*, 628 F. Supp. 3d at 990.  Accordingly, summary judgment is not appropriate on these grounds.

### 4.   *Qualified Immunity*

Defendants next argue that TSE Defendants are entitled to qualified immunity. (Mot. 21.)

In determining whether a government official is entitled to qualified immunity, courts consider: (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct.  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

Defendants previously moved for judgment on the pleadings on this basis, arguing under the second prong that their conduct did not violate a clearly established right.  (Mot. J. Pleadings 11.)  The Court determined that *Nelson v. City of Davis*,

685 F.3d 867 (9th Cir. 2012) put TSE Defendants on notice of a clearly established precedent regarding Castellanos's Fourth and Fourteenth Amendment right against excessive force. (Order Mot. J. Pleadings 8.) Defendants now argue that the facts in this case are distinguishable from *Nelson* because the officers fired the 37 LLM at the ground. (Reply 4.)

As discussed above, whether Officers MacArthur and Pineda deployed the 37 LLM using the skip-fire method is a disputed issue of material fact. Therefore, granting summary judgment on the issue of qualified immunity is not appropriate when it "turns on accepting [d]efendant's version of disputed facts." *Sanderlin v. City of San Jose*, No. 5:20-cv-04824-BLF, 2023 WL 2562400, at *11 (N.D. Cal. Mar. 16, 2023), *reversed in part on other grounds*, 2025 WL 295360 (N.D. Cal. Jan. 23, 2025).

5.    *Conclusion—Excessive Force (Second Cause of Action)*

In sum, with respect to Castellanos's excessive force cause of action against Officers MacArthur and Pineda, genuine disputes of material fact exist, precluding summary judgment, and the officers are not entitled to qualified immunity. Accordingly, the Court **DENIES** summary judgment as to the second cause of action against Officers MacArthur and Pineda.

Conversely, Castellanos fails to establish a genuine dispute of material fact that Lt. Jenal caused Castellanos's injury. Therefore, the Court **GRANTS** summary judgment in favor of Lt. Jenal, as to the second cause of action against Lt. Jenal in his individual capacity. The Court also **DISMISSES** this claim against Lt. Jenal in his official capacity as redundant to the City. *See Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) ("An official capacity suit against a municipal officer is equivalent to a suit against the entity.").

**B.    Municipal Liability (Second and Third Causes of Action)—City**

Defendants next seek summary judgment on Castellanos's second and third cause of actions against the City on the basis that Castellanos cannot show (1) a

15

widespread custom or practice, (2) inadequate training that amounts to deliberate indifference, and (3) ratification.  (Mot. 22–29.)

### 1. Custom or Practice

Castellanos contends that the Los Angeles Police Department ("LAPD") had a policy and practice of using excessive force in crowd control situations, including the use of rubber bullets, riot gear, and LLMs.  (Opp'n 25; FAC ¶¶ 39, 43.)  Defendants argue that Castellanos cannot prove a widespread custom or practice.  (Mot. 24.)

A plaintiff "seeking to impose liability on a municipality under § 1983 [is required] to identify a municipality 'policy' or 'custom' that caused the plaintiff's injury."  *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)).  In the absence of an expressly adopted policy, a municipality may still be liable if "an employee commits a constitutional violation pursuant to a longstanding practice or custom."  *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003).  The plaintiff "must prove the existence of a longstanding practice or policy to the satisfaction of the factfinder."  *Id.*

To show custom and policy, Castellanos submits a report by independent counsel, Gerald Chaleff.  (French Decl. Ex. 44 ("Chaleff Report"), ECF No. 107-44.) The Chaleff Report is an independent examination of LAPD's response to protests in 2020.  (*Id.* at 3.)  Chaleff reports that, during the 2020 protests, beanbag shotguns and 37mm and 40mm less lethal munitions caused significant injuries.  (*Id.* at 8.) However, Chaleff does not indicate whether the LAPD had a custom and practice of using the 37 LLM prior to 2020 that "can be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded."  *Hunter v. City of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011).  Thus, Castellanos fails to offer sufficient proof that the City had a longstanding practice or custom of using the 37 LLM.  *Sloan*, 330 F.3d at 1164.

Therefore, Castellanos fails to establish a genuine dispute of material fact to sustain his *Monell* claims on this basis.

### 2. Failure to Train

Castellanos contends that the City's 37 LLM training is inadequate because "it did not include training on how to estimate distances . . . , at moving targets, or at night." (Opp'n 24.)  Defendants move for summary judgment based on Castellanos's inability to show the City's conduct amounts to deliberate indifference.  (Mot. 26.)

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Flores v. County of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  This standard is met when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390.

Here, the LAPD's Use of Force-Tactics Directive instructs that "[t]he 37mm foam rubber baton round is a non-target specific round used for crowd control" and "the 37mm minimum recommended range is 5–10 feet in front of the crowd (skip fired) with a maximum effective range of 50 feet."  (Busailah Decl. Ex. 18 ("LAPD Tactics Directive") 5–6, ECF No. 97-15.)  The LAPD's Basic Metro School provides courses on crowd control, including training and certification on the 37 LLM.  (SUF ¶ 65.)  Officers must complete yearly training on the 37 LLM system to maintain their certification and only officers who are trained on the 37 LLM are assigned the weapon system.  (*Id.* ¶ 37, 39, 67, 69; Jenal Dep. Tr. 34:25–35:3; Busailah Decl. Ex. 16 ("LAPD Crowd Control Course Outline") 16, ECF No. 97-13 (stating that "[t]hose not trained and certified shall not be assigned to utilize less-lethal" (emphasis omitted)).)  Officers MacArthur and Pineda both received 37 LLM training and certification.

(SUF ¶ 38.)  During such training, both officers fired the 37 LLM using the "skip-fire" method without difficulty.  (*Id.* ¶ 44.)

In reviewing the evidence, the Court finds there is no genuine dispute of material fact as to whether the City showed a deliberate indifference to the rights of persons with whom LAPD officers come into contact.  LAPD officers must complete annual training and certification to be permitted to use the 37 LLM weapon and Officers MacArthur and Pineda both received the requisite training and certification. The training clearly instructs that the 37 LLM is not target-specific and must be fired using the "skip-fire" method within 5–10 feet in front of the crowd.  Castellanos fails to show that the City's 37 LLM training was so inadequate that a reasonable fact finder could find the City was "deliberately indifferent to the need" for additional training.  *Canton*, 489 U.S. at 390.

Accordingly, Castellanos fails to show a genuine dispute of material fact that the City acted with deliberate indifference to be liable under *Monell*.

### 3.     *Ratification*

Castellanos's ratification allegations against the City boil down to two conclusory statements that the City and Chief Moore ratified the officers' conduct. (FAC ¶ 36, 37.)   Defendants move for summary judgment on the grounds that Castellanos lacks evidence to show Chief Moore ratified any conduct that Castellanos alleges caused his injury.  (Mot. 25.)  Castellanos does not address ratification in his opposition.  (*See* Opp'n.)

"A municipality may be held liable for a constitutional violation if a final policymaker ratifies a subordinate's actions."  *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004).   "The policymaker must have knowledge of the constitutional violation and actually approve of it."  *Id.*  Here, Castellanos fails to sustain a claim under the ratification theory because Chief Moore was not present when the incident occurred, and Castellanos presents no evidence to support that Chief Moore ratified the officers' conduct.  (SUF ¶ 56.)

18

Castellanos thus fails to establish a genuine dispute of material fact to sustain his *Monell* claims based on ratification.

### 4. Conclusion—Municipal Liability

For the reasons discussed above, the Court **GRANTS** summary judgment on Castellanos's second and third causes of action for municipal liability against the City.

## C. Fourth, Fifth, Sixth, and Seventh Causes of Action—All Defendants

Finally, Defendants move for summary judgment as to Castellanos's state law claims. (Mot. 29–30.) The Court addresses each in turn below.[9]

### 1. Bane Act (Fourth Cause of Action)

Defendants move for summary judgment on Castellanos's Bane Act claim on the grounds that Castellanos cannot establish a constitutional claim for excessive force. (Mot. 29.)

"The elements of a Bane Act claim are essentially identical to the elements of a § 1983 claim, with the added requirement that the government official had a specific intent to violate a constitutional right." *Hughes v. Rodriguez*, 31 F.4th 1211, 1224 (9th Cir. 2022) (internal quotation marks omitted). A showing of "reckless disregard" is sufficient to show "a specific intent to deprive that person of those rights." *Reese v. County of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018).

The Court already determined that, viewing the disputed facts in a light most favorable to Castellanos, a reasonable jury could find the officers used unreasonable force in violation of Castellanos's Fourth Amendment rights. Likewise, a reasonable jury could find that the officers acted with reckless disregard when they discharged the 37 LLM towards the crowd, either directly at people and cars or using the "skip-fire" method. These same disputes of material fact preclude summary judgment on Castellanos's fourth cause of action.

---

[9] In their reply brief, Defendants raise new arguments for summary judgment on Castellanos's state law claims against Lt. Jenal and on the imposition of punitive damages. (Reply 9–13.) The Court declines to consider these new arguments raised for the first time in Defendants' reply. *See Est. of Saunders*, 745 F.3d at 962 n.8.

*2.        Assault and Battery (Fifth and Sixth Causes of Action)*

Defendants assert that Castellanos's assault and battery claims fail because he cannot establish that the officers' use of force was unreasonable.  (Mot. 29–30.)  However, the Court already determined that there is a genuine issue of fact whether the officers' use of force is excessive.  Accordingly, that same dispute of material fact precludes summary judgment on Castellanos's fifth and sixth causes of action.

*3.        Negligence (Seventh Cause of Action)*

Lastly, Defendant argues that Castellanos's negligence claim fails because Defendants did not breach a duty owed to Castellanos.  (*Id.* at 30.)  "Under California law, police officers have a duty not to use excessive force."  *Warren v. Marcus*, 78 F. Supp. 3d 1228, 1252 (N.D. Cal. 2015) (internal quotation marks omitted).  As discussed, there is a genuine dispute of material fact whether the officers' force was excessive, and this also precludes summary judgment on Castellanos's seventh cause of action.

*4.        Conclusion—State Law Claims*

For the reasons discussed above, the Court **DENIES** summary judgment on Castellanos's fourth through seventh causes of action.

## VI.    CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment.  (ECF No. 97).

Specifically, the Court:

- **DISMISSES WITH PREJUDICE** the first cause of action and all claims as against Chief Moore;
- **DISMISSES AS MOOT** the second cause of action against Lt. Jenal in his official capacity;
- **GRANTS** summary judgment in favor of Lt. Jenal on the second cause of action against him in his individual capacity;
- **GRANTS** summary judgment in favor of the City on the second and third causes of action against it; and
- **DENIES** the balance of Defendants' Motion.

Consequently, the following causes of action remain for resolution at trial:

- The second cause of action against Officers MacArthur and Pineda; and
- The fourth, fifth, sixth, and seventh causes of action against the City and TSE Defendants.

**IT IS SO ORDERED.**

March 7, 2025

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**

21